[No. C049340. Third Dist. Aug. 3, 2006.]

DAIMLERCHRYSLER MOTORS COMPANY et al., Cross-complainants and Respondents, v.
LEW WILLIAMS, INC., et al., Cross-defendants and Appellants.

COUNSEL

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, C. Athena Roussos; Law Offices of Joseph W. Scalia, Joseph W. Scalia; Law Offices of Michael J. Flanagan and Michael J. Flanagan for Cross-defendants and Appellants.

Caulfield, Davies & Donahue, Robert E. Davies; Wheeler Trigg Kennedy, Gwen J. Young and Steven M. Kelso for Cross-complainants and Respondents.

OPINION

**NICHOLSON, J.**—In violation of an agreement not to protest, a car dealer protested a manufacturer's notice of its intent to establish a new car dealership. As a result of the protest, the manufacturer determined not to establish the new dealership. The company who had sought the dealership, not a party to this appeal, sued the manufacturer. In turn, the manufacturer filed a cross-complaint against the protesting dealer. The dealer filed a motion under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16)[1] to have the cross-complaint stricken, but the trial court denied the dealer's motion. The dealer appeals the trial court's order, and we affirm.

## STATUTORY BACKGROUND

State statutes regulate the establishment or relocation of an automobile dealership franchise. A manufacturer must notify the New Motor Vehicle Board (Board) of its intent to establish or relocate a dealership. (Veh. Code, § 3062, subd. (a)(1).)

The manufacturer must similarly notify each existing dealership offering the same line-make of vehicles within a radius of 10 miles from the new dealership. (Veh. Code, §§ 507, 3062, subd. (a)(1).) When it notifies the existing dealerships, it must also inform them of their right to file a protest with the Board. (Veh. Code, § 3062, subd. (a)(1).)

If an existing dealer files a protest, the Board must convene an administrative hearing to determine whether good cause exists for not permitting the new dealership. The manufacturer may not establish or relocate the dealership while the protest is pending, or afterward if the Board finds good cause not to allow the manufacturer to proceed. (Veh. Code, § 3062, subd. (a)(1).)

A manufacturer need not comply with this notice and protest procedure where it seeks to reopen at the same location a dealership that has been out of operation for less than a year, or to establish a new dealership within one-fourth mile of a dealership of the same line-make that has been out of operation for less than 90 days. (Veh. Code, § 3062, subds. (b)(2), (d).)

## FACTS

Until December 1994, Bear Country Dodge, Inc. (not a party) operated a Jeep dealership on Florin Road and a Chrysler-Plymouth dealership on 65th

---

[1] All undesignated section references are to the Code of Civil Procedure.

Street in Sacramento. That month, both dealerships closed. Cross-complainant DaimlerChrysler Motors Company (DaimlerChrysler) intended to replace those dealerships within the statutory time periods exempt from the notice and protest procedure.

At that time, cross-defendants Lew Williams, Inc., and Keil Enterprises owned DaimlerChrysler dealerships within 10 miles of the defunct Bear Country dealerships. Lew Williams, Inc., owned Great Valley Chrysler-Plymouth (Great Valley), and Keil Enterprises owned Elk Grove Chrysler-Plymouth (Elk Grove). We refer to these entities collectively as Keil, as all are owned by the same entity.

In February 1995, DaimlerChrysler and Keil entered into a letter agreement (Letter Agreement) by which DaimlerChrysler agreed not to reopen or reestablish a dealership on or near the Bear Country sites for at least one year. For the next five years afterward, DaimlerChrysler would require existing dealerships not to protest the addition of a Jeep line in the Elk Grove area.

In exchange, Keil agreed not to protest DaimlerChrysler's establishment of a dealership anywhere in the South Sacramento area. Specifically, Keil "agree[d] to waive any and all rights on behalf of both Great Valley CP and Elk Grove CP that those dealers may have to protest or challenge such re-opening or re-establishment after February 8, 1996 of a [Chrysler] dealership before any court or administrative agency under any federal or state statute, regulation or rule including, but not limited to any right to protest before the California New Motor Vehicle Board . . . ."

The following day, DaimlerChrysler awarded a Jeep Sales and Service Agreement to Great Valley after obtaining an agreement not to protest from the one dealer within the statutory relevant market area who otherwise could have protested. Also, DaimlerChrysler deferred reopening or reestablishing any dealership in South Sacramento as required by the Letter Agreement and beyond the statutory protest exemption time periods.

In early 2000, DaimlerChrysler met with Sacramento area dealers, including Keil, to discuss ways to accomplish its dealer network objectives: reestablish Chrysler and Jeep on Florin Road, and have all Chrysler and Jeep outlets in a single location and owned and operated by the same dealer. All of the dealers understood they had to agree to the dealership location and ownership changes being proposed or else no changes could be made given the protest rights of some of those dealers.

As a result of these discussions, in December 2000, DaimlerChrysler entered into an agreement with Keil awarding Elk Grove a Jeep Sales and Service Agreement on condition Elk Grove relocated to the Elk Grove Auto Mall. As part of that process, Richard Keil, president of Keil Enterprises, acknowledged in writing that the February 1995 Letter Agreement "continues to bind Keil Enterprises, d.b.a. Elk Grove Chrysler Jeep and Lew Williams Inc. d.b.a. Great Valley Chrysler Jeep to the commitments therein."

In April 2001, and also as a result of those same discussions, DaimlerChrysler entered into a letter of intent agreement (LOI) with the owners of Lasher Dodge (Lasher), plaintiffs in the underlying action but not parties to this appeal. DaimlerChrysler and Lasher agreed Lasher would sell its Jeep dealership located in Woodland, move its Dodge dealership from Florin Road to a new facility at the Elk Grove Auto Mall, and establish a Chrysler-Jeep dealership at Florin Road. DaimlerChrysler had informed Keil of this proposed agreement in 2000 before Keil acknowledged in writing the continued validity of the Letter Agreement.

In 2003, Lasher completed its new Dodge facility. DaimlerChrysler gave notice to the Board and sent out the notice required by Vehicle Code section 3062 of its intent to establish a Chrysler-Jeep dealership with Lasher on Florin Road. A few days later, Keil filed protests on behalf of Great Valley and Elk Grove challenging the establishment of Lashers' Chrysler-Jeep dealership.

DaimlerChrysler subsequently withdrew its notice of intention and did not proceed to establish the new Chrysler-Jeep dealership with Lasher. DaimlerChrysler testified it would not have entered into the LOI with Lasher or otherwise agreed to award a Chrysler-Jeep franchise to any dealer candidate on Florin Road were it not for the Letter Agreement with Keil.

## PROCEDURAL HISTORY

In December 2003, Lasher filed the underlying action against DaimlerChrysler and Keil. In October 2004, DaimlerChrysler filed a cross-complaint against Keil alleging five causes of action: breach of contract, interference with the Lasher LOI, promissory estoppel, indemnification, and contribution. Each claim was premised on Keil's breach of the February 1995 Letter Agreement where Keil waived any right to protest the establishment or reopening of a DaimlerChrysler dealership in South Sacramento. (Lasher subsequently dismissed Keil from its action.)

On December 6, 2004, Keil filed a motion to strike the cross-complaint pursuant to section 425.16, commonly known as the anti-SLAPP statute. The trial court denied the motion. It determined DaimlerChrysler established a probability of prevailing on each of its causes of action.

Keil now appeals from the trial court's denial.

## DISCUSSION

### I

### *Standard of Review*

We review de novo whether a complaint should have been stricken under the anti-SLAPP statute. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906 [120 Cal.Rptr.2d 576]; *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 807 [119 Cal.Rptr.2d 108].)

Subdivision (b)(1) of section 425.16 provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

■ "Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."

(*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*), original italics.) We proceed to apply both prongs to this case.

## II

### *Protected Activity*

Keil claims DaimlerChrysler's causes of action arose from exercising its constitutional right to petition by protesting DaimlerChrysler's proposed dealership before the Board. We agree.

"As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e).)

There is no dispute Keil's protests were written statements made before an executive proceeding and in connection with an issue under review by an executive body. They thus were acts in furtherance of Keil's constitutional right to petition.

■ Relying on *Navellier*, DaimlerChrysler argues Kiel's protests were not constitutionally protected because Keil waived the right to file the protests. *Navellier* does not so hold. The high court made clear the mere fact the constitutional speech occurred in violation of a contract did not by itself preempt the application of the anti-SLAPP statute. Rather, the issue of breach was to be addressed under the statute's merits prong. "The Legislature's inclusion of a merits prong to the statutory SLAPP definition (§ 425.16, subd. (b)(1)) . . . preserves appropriate remedies for breaches of contracts involving speech by ensuring that claims with the requisite minimal merit may proceed. [Citations.] Indeed, as the statute is designed and as we have construed it, a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." (*Navellier, supra,* 29 Cal.4th at p. 94.) This appeal presents the unique circumstance foreseen by the *Navellier* court. Nonetheless, it is the plaintiff's burden to substantiate defendant breached a valid waiver to protest. We now address that prong.

## III

### *Probable Merit*

Keil claims DaimlerChrysler did not show a probability of success on the merits of its cross-complaint. We disagree.

"As we previously have observed, in order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have ' "stated and substantiated a legally sufficient claim." ' [Citations.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citations.]" (*Navellier, supra,* 29 Cal.4th at pp. 88–89.)

" 'In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.] Thus, a plaintiff's burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment. [Citation.]" (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 317–318 [126 Cal.Rptr.2d 516], original italics.)

■ There can be no dispute Keil breached the Letter Agreement by filing protests after expressly agreeing for valuable consideration not to do so. As *Navellier* suggests, that fact alone is likely sufficient minimum proof to overcome an anti-SLAPP motion. Keil, however, asserts it can establish as a matter of law that DaimlerChrysler cannot prevail. Specifically, Keil argues (1) DaimlerChrysler is barred from proceeding because it failed to exhaust its administrative remedies; (2) the waiver in the Letter Agreement is void; and (3) DaimlerChrysler failed to introduce evidence showing a causal link between the filing of the protests and any harm suffered by DaimlerChrysler. We address each point.

### A. *Exhaustion of administrative remedies*

■ Keil argues DaimlerChrysler was required to have the Board first determine the validity of Keil's Letter Agreement waiver. This is incorrect. Although the Board has statutory authority to hear and decide protests,

including the authority to dismiss a protest for good cause (Cal. Code Regs., tit. 13, § 551.8, subd. (c)), state law expressly grants a party to a protest the option to initiate an action on common law and statutory claims "*directly* in any court of competent jurisdiction." (Veh. Code, § 3050, subd. (e), italics added; see *Hardin Oldsmobile v. New Motor Vehicle Bd.* (1997) 52 Cal.App.4th 585, 593–594 [60 Cal.Rptr.2d 583].) The doctrine of exhaustion of administrative remedies does not apply where the Legislature has granted the right to seek judicial relief without resort to administrative remedies. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1151 [43 Cal.Rptr.2d 693, 899 P.2d 79].)

## B. *Validity of waiver*

Keil argues its waiver contained in the Letter Agreement is void under Vehicle Code section 11713.3. That statute makes it unlawful for a manufacturer to "require a dealer to prospectively assent to a release, assignment, novation, waiver, or estoppel which would relieve any person from liability to be imposed by this article [article 1 of chapter 4, division 5 of the Vehicle Code]" or to "modify, replace, enter into, relocate, terminate or refuse to renew a franchise in violation of Article 4 (commencing with Section 3060) of Chapter 6 of Division 2." (Veh. Code, § 11713.3 , subds. (g), (*l*).)

The statute does not invalidate Keil's waiver. First, DaimlerChrysler did not "require" Keil to assent to the wavier. The waiver was the result of an arm's length voluntary transaction where for valuable consideration, DaimlerChrysler agreed not to exercise its right to reestablish a franchise on Florin Road within the time period statutorily exempt from protests in exchange for Keil agreeing not to protest should DaimlerChrysler eventually reestablish a dealership there.

Keil retorts that DaimlerChrysler admitted it required the dealers to waive their rights. The statement is taken out of context. In 2000, five years *after* Keil executed the wavier, DaimlerChrysler met with Sacramento area dealers to discuss its business objectives, including reestablishing a dealership on Florin Road. DaimlerChrysler stated its objectives could not be met unless all of the dealers agreed to the proposed changes, given the existence of protest rights held by certain of the dealers. Nothing in this statement discloses coercion by DaimlerChrysler on its dealers, and certainly the statement cannot apply to a waiver made years before.

Second, Vehicle Code section 11713.3 does not invalidate the waiver because the waiver did not relieve any person from liability imposed under article 1 of chapter 4, division 5 of the Vehicle Code. Keil agreed to waive its

statutory protest rights, which are not contained in article 1, chapter 4, division 5. Indeed, Keil did not relieve any person from liability at all.

Third, DaimlerChrysler did not replace a franchise in violation of article 4, chapter 6, division 2 of the Vehicle Code. Nowhere has Keil alleged DaimlerChrysler violated those provisions as it negotiated the waiver and eventually sought to reestablish a dealership on Florin Road. In short, Vehicle Code section 11713.3 did not invalidate Keil's Letter Agreement waiver.

## C. *Causal link*

Keil claims DaimlerChrysler pled no facts and presented no evidence showing Keil's protests caused harm to DaimlerChrysler, an element in each of DaimlerChrysler's causes of action. Keil asserts any damages DaimlerChrysler may have suffered resulted from DaimlerChrysler's decision to terminate the LOI, not from Keil's filing of the protests.

Like the trial court, we conclude DaimlerChrysler has presented sufficient facts of harm to satisfy the "minimal" standard required under the anti-SLAPP statute of proving probability of success on each of its causes of action.

The causation element can be analyzed by determining what if anything would have occurred differently had Keil not filed the protests. (See *McDonald v. John P. Scripps Newspaper* (1989) 210 Cal.App.3d 100, 104 [257 Cal.Rptr. 473].) Had Keil not protested, DaimlerChrysler would have awarded a Chrysler Jeep agreement to Lasher for a dealership on Florin Road. As a result of the protest, at a minimum, that plan was interrupted by a temporary stay and, had DaimlerChrysler not withdrawn its notice, a hearing before the Board.

This is a sufficient showing of causation and harm to survive an anti-SLAPP motion, particularly where, as here, Keil waived the very constitutional right it seeks to vindicate with this motion. The anti-SLAPP statute was enacted due to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) Keil waived its right to protest, then duplicitously protested. It should not be allowed to shield itself from liability under cloak of a statute designed to protect a right Keil voluntarily relinquished in return for economic benefits it now holds.

## DISPOSITION

The trial court's order denying Keil's anti-SLAPP motion is affirmed. Costs on appeal are awarded to DaimlerChrysler. (Cal. Rules of Court, rule 27(a)(1).)

Sims, Acting P. J., and Robie, J., concurred.