UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LOS FELIZ FORD, INC., DBA Star Chrysler Jeep, <br><br>         Plaintiff - Appellant, <br><br>  v. <br><br> CHRYSLER GROUP, LLC, <br><br>         Defendant - Appellee, <br><br>   and <br><br> UNITED STATES OF AMERICA, <br><br>         Intervenor. | No. 12-56082 <br><br> D.C. No. 2:10-CV-06077-GAF-MAN <br> Central District of California, Los Angeles <br><br><br> ORDER |

Before: D.W. NELSON, PAEZ, and NGUYEN, Circuit Judges.

Chrysler's Petition for Panel Rehearing is granted, and the Memorandum Disposition filed April 24, 2014 is amended as follows.

In the second sentence of the second paragraph on the third page, "franchise agreements" is changed to "LOIs." The sentence now states: The relevant inquiry in analyzing § 747(e)'s "customary and usual" requirement is the terms of LOIs that new Chrysler dealers actually agreed to.

At the end of the same sentence, a footnote is added that states:

The LOI Chrysler offered to Star states "[t]his letter of intent . . . [is] to enter into Chrysler and Jeep Sales and Service Agreements . . . in their then-customary form." It is unclear from the record what this sales and service agreement would include, or what "then-customary" means. On remand, because the sales and service agreement is referenced in the LOI, the district court may decide whether the contents of sales and service agreements are relevant to the question of whether Chrysler provided Star a "customary and usual" LOI.

The phrase "franchise agreements" is changed to "LOIs" in the last sentence of the same paragraph, and it now reads: Nor did Chrysler present any other evidence or argument showing that the terms of the unexecuted letters are probative of the terms of executed LOIs.

No further petitions for panel rehearing will be entertained.

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 22 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LOS FELIZ FORD, INC., DBA Star
Chrysler Jeep,

        Plaintiff - Appellant,

  v.

CHRYSLER GROUP, LLC,

        Defendant - Appellee,

  and

UNITED STATES OF AMERICA,

        Intervenor.

No. 12-56082

D.C. No. 2:10-CV-06077-GAF-
MAN

AMENDED MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted February 11, 2014
Pasadena, California

Before: D.W. NELSON, PAEZ, and NGUYEN, Circuit Judges.

---

     [*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Loz Feliz Ford d/b/a Star Chrysler Jeep ("Star") appeals from the district court's grant of summary judgment to Chrysler Group, LLC ("Chrysler"). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm, in part, reverse, in part, vacate, in part, and remand.

1. The district court did not err by granting judgment to Chrysler on Star's claim for reinstatement, and we affirm as to this issue. Even if reinstatement is available as a remedy under Section 747 of the Consolidated Appropriations Act of 2010, 123 Stat. 3034, at 3219 (2009) ("§ 747"), the arbitrator in this case ordered, "[Star] shall be added to [] Chrysler's dealer network . . . ." She did not order reinstatement.[1] Moreover, Star only challenges the operational prerequisites required by Chrysler, but not the terms of a final sales and service agreement. Section 747(e) contemplates "customary and usual" operational prerequisites without regard to the relief ordered by the arbitrator. Because operational prerequisites may be required when an arbitrator orders reinstatement or addition, whether the arbitrator ordered addition or reinstatement does not bear on Star's challenge to the Letter of Intent ("LOI").

---

[1] Because Star was not awarded reinstatement, we do not reach Chrysler's argument that a reinstatement remedy violates the Constitution.

2

2. The district court erred by granting judgment to Chrysler on Star's claim that its LOI failed to satisfy § 747(e)'s "customary and usual" requirement, and we reverse. Chrysler showed through John Tangeman's declaration that Star's LOI contained many terms commonly asked of new dealers at the start of negotiations. Star responded with the opinion of its expert John Altstadt, who stated that the terms in Star's LOI were so onerous that no dealership would actually agree to them. Altstadt also stated that a customary and usual LOI containing terms similar to those in Star's letter normally contains incentives to mitigate the dealer's burden.

First, we are not persuaded that Chrysler met its initial burden as the moving party by producing the Tangeman declaration. The relevant inquiry in analyzing § 747(e)'s "customary and usual" requirement is the terms of LOIs that new Chrysler dealers actually agreed to.[2] Any other reading would render § 747(e)'s "customary and usual" requirement meaningless by allowing a covered manufacturer to nullify an arbitrator's order by offering onerous terms in initial

---

[2]    The LOI Chrysler offered to Star states "[t]his letter of intent . . . [is] to enter into Chrysler and Jeep Sales and Service Agreements . . . in their then-customary form." It is unclear from the record what this sales and service agreement would include, or what "then-customary" means. On remand, because the sales and service agreement is referenced in the LOI, the district court may decide whether the contents of sales and service agreements are relevant to the question of whether Chrysler provided Star a "customary and usual" LOI.

LOIs and then selectively negotiating more advantageous terms only with dealers it chooses.[3] Thus, Chrysler failed to meet its burden because it presented no evidence that any dealer added after Chrysler's bankruptcy actually accepted terms similar to those offered to Star after an arms-length negotiation. Nor did Chrysler present any other evidence or argument showing that the terms of the unexecuted letters are probative of the terms of executed LOIs.[4]

Moreover, even if the initial LOIs on their own are probative of executed agreements, Altstadt's opinion created a triable issue of fact. The Tangeman declaration only analyzed the prerequisites required of Star, but made no mention of whether letters issued to other dealers contained incentives. Thus, Altstadt created a material dispute as to whether Star's LOI is unusual because it lacks incentives.

Chrysler's argument that Star failed to meet its burden as the nonmoving party because it did not produce LOIs executed by other dealers is without merit. "[A] party seeking summary judgment always bears the initial responsibility of

---

[3] We offer this hypothetical to explain our interpretation of § 747, but in no way do we mean to imply that any covered manufacturer actually engaged in such conduct.

[4] Nothing in our disposition precludes Chrysler from showing such a link on remand or otherwise using the unexecuted LOIs as evidence should the district court find them to be admissible.

4

informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Chrysler identified the Tangeman declaration as the portion of the record that supported summary judgment. Star showed that material disputes existed concerning the subject matter of the declaration, and we find nothing in our precedent or the language of Rule 56 that required Star to do more as the nonmoving party. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (explaining that the nonmoving party's burden on summary judgment is only "to produce enough evidence to create a genuine issue of material fact"); Fed. R. Civ. P. 56(c).

3. The district court did not analyze Star's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, et seq., claim to the extent that it was premised on an alleged violation of § 747, and we vacate the grant of judgment to Chrysler on this claim. Star's alternative argument that Chrysler independently violated the "unfair" prong of the UCL by granting Jack Ellis Dodge new Chrysler and Jeep dealerships, however, is without merit. Chrysler was following through on a plan examined and approved by the

5

bankruptcy court, and state law cannot be used to circumvent the bankruptcy court's order. *40235 Wash. St. Corp. v. Lusardi*, 329 F.3d 1076, 1084–85 (9th Cir. 2003) (finding state law preempted where simultaneous compliance with state law and bankruptcy stay was impossible)*; see also In re Old Carco LLC*, 470 B.R. 688, 704 (S.D.N.Y. 2012) (addressing preemption of state laws that conflict with the bankruptcy court's order terminating dealership franchises during Chrysler's bankruptcy).

4. The district court did not err by granting judgment to Chrysler on Star's claim under California Vehicle Code § 11713.3, and we affirm as to this issue. Protest waivers like the one included in Star's LOI were valid and enforceable in California during the relevant times. *DaimlerChrysler Motors Co. v. Lew Williams*, *Inc*., 48 Cal. Rptr. 3d 233, 239–40 (Ct. App. 2006).[5] Because such waivers were consistent with the scheme contained in California Vehicle Code §§ 3060–3069.1, requiring such a waiver did not constitute a violation of those sections. Thus, California Vehicle Code § 11713.3(*l*), which only applies when §§ 3060–3069.1 are violated, is inapplicable. We note, however, that even though the protest waiver was valid and enforceable, whether such waivers are "customary

---

[5] Amendments to § 11713.3 went into effect on January 1, 2012, January 1, 2013, and January 1, 2014.

and usual" terms in LOIs for § 747 purposes remains unresolved on the record before us.

Each party shall bear its own costs.

**AFFIRMED**, in part, **REVERSED**, in part, **VACATED**, in part, and **REMANDED.**