Filed 1/27/15  Hydro Co. v. Elsinore Valley Mun. Water Dist. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE HYDRO COMPANY, INC., | D063673 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00057077-CU-BC-NC) |
| ELSINORE VALLEY MUNICIPAL WATER DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Reversed with directions.

Yale & Baumgarten and David W. Baumgarten for Plaintiff and Appellant.

Best Best & Krieger, James B. Gilpin, and Holly E. Cheong for Defendant and Respondent.

Plaintiff The Hydro Company, Inc., doing business as The Nevada Hydro Company, Inc. (Nevada Hydro), appeals an order granting the special motion to strike filed by defendant Elsinore Valley Municipal Water District (the District) under Code of

Civil Procedure section 425.16, commonly known as the "anti-SLAPP" statute.[1] Nevada Hydro contends that the court erred in (1) determining that Nevada Hydro's complaint for breach of contract arose from an act in furtherance of the District's right of petition or free speech (§ 425.16, subd. (b)(1)); (2) finding that the commercial speech exception to the anti-SLAPP statute did not apply (§ 425.17, subd. (c)); and (3) concluding that Nevada Hydro had not established a probability that it would prevail on its claim for breach of contract (§ 425.16, subd. (b)(1)).

We conclude that Nevada Hydro has established a probability that it will prevail on its claim. Therefore, even assuming that the trial court did not otherwise err, the District's anti-SLAPP motion should not have been granted. The order is reversed with directions to deny the motion.

FACTUAL AND PROCEDURAL BACKGROUND

In 1995, the District obtained a preliminary permit from the Federal Energy Regulatory Commission (FERC) for the planned Lake Elsinore Pumped Storage project, later known as the Lake Elsinore Advanced Pumped Storage project (LEAPS). The project involved construction of the following elements: a reservoir adjacent to Lake Elsinore, California, at a higher elevation than the lake; a pumping system to deliver water from Lake Elsinore to the new reservoir; and a series of turbines to generate electricity when water from the reservoir is released back to the lake. The project would

---

[1] " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 268, fn. 1 (*Soukup*).) All further statutory references are to the Code of Civil Procedure unless otherwise stated.

pump water into the new reservoir using electricity during periods of low electrical demand. During periods of high electrical demand, the project would release the pumped water into the lake, thereby generating electricity that would be sold to a local utility.

In order to transfer the necessary electricity, the LEAPS project included plans for an electrical transmission line connecting the LEAPS project to the wider power grid. The nature and configuration of this transmission line would later prove to be controversial.

The District and Nevada Hydro entered into a Development Agreement for the LEAPS project. The Development Agreement broadly granted Nevada Hydro the exclusive right to develop, finance, construct, and operate the project. In exchange, Nevada Hydro agreed, among other things, to bear the costs of developing, constructing, and operating the project; to reimburse the District for its expenditures related to the project; to pay a one-time fee to the District; and to pay the District for water management services at Lake Elsinore related to the project.[2]

The Development Agreement authorized Nevada Hydro to obtain all necessary licenses and permits for the LEAPS project, including a FERC license. It also obligated Nevada Hydro to use its "best and reasonable judgment" to obtain a FERC license and construct and operate the project. The Development Agreement required the District to "make every reasonable effort necessary or appropriate to effectuate" Nevada Hydro's

---

[2]     Part of the District's interest in the LEAPS project appears to be related to the District's belief that the LEAPS project would ensure a baseline level of water in Lake Elsinore and improve water quality.

development rights and to "use its reasonable best efforts to obtain all permits . . . necessary in the reasonable opinion of [Nevada Hydro], desirable for the purpose of . . . enabling [Nevada Hydro] to proceed with development of the Project." The Development Agreement also obligated each party, at the request of the other, to "execute such additional instruments and take such additional acts as are reasonably necessary to effectuate this Agreement."

Nevada Hydro and the District obtained a second preliminary permit from FERC. The second preliminary permit appeared to contemplate that the LEAPS project would be larger than initially planned. The permit application filed by Nevada Hydro and the District identified two transmission lines for the project: a southerly line connecting to San Diego Gas & Electric's Talega-Escondido transmission line and a northerly line connecting to Southern California Edison's Valley-Serrano transmission line. Together, the transmission lines for the LEAPS project were called the TE/VS transmission line or the TE/VS interconnect.

While the application for the second preliminary permit was pending, the California Independent System Operator identified a need for additional transmission capability, unrelated to the LEAPS project, in the area where the TE/VS interconnect would be constructed. The TE/VS interconnect could satisfy this need by transmitting electricity between the two existing lines maintained by San Diego Gas & Electric and Southern California Edison. The District initiated a separate environmental review process for the development of a project covering only the TE/VS interconnect.

4

After obtaining the second preliminary permit, Nevada Hydro and the District applied for a FERC license for the LEAPS project. FERC prepared a Final Environmental Impact Statement (EIS) for the project. The Final EIS noted that the license application included a proposal to build the TE/VS interconnect. In an appendix to the Final EIS, FERC concluded that the TE/VS interconnect "would be an appropriate long-term solution to southern California's transmission congestion bottlenecks as well as the transmission-constrained, generation-deficient San Diego area." FERC noted that in such a scenario, the TE/VS interconnect would fall outside any FERC license because FERC generally licenses only primary transmission lines, i.e., transmission lines that carry electricity solely to or from a FERC-licensed project. Because the TE/VS interconnect would carry additional electricity, unrelated to the LEAPS project, FERC could not license it. Instead, the TE/VS interconnect would be within the jurisdiction of the California Public Utilities Commission (CPUC).

In order to obtain the FERC license, Nevada Hydro and the District were required to obtain certification of compliance with the Federal Clean Water Act from the California State Water Resources Control Board (State Water Board). Nevada Hydro and the District submitted and withdrew applications for certification annually for several years.[3] The final application, filed in 2009, was denied without prejudice based on a lack of documentation that the LEAPS project had been assessed for environmental impacts under the California Environmental Quality Act (CEQA).

---

[3] The process of submitting and withdrawing applications appears to be a procedure used to avoid formal denial of the application by the State Water Board.

5

The reason for the delay in CEQA compliance is unclear from the record. The allocation of the cost of preparing an environmental impact report (EIR) between the District and Nevada Hydro appears to have been an issue. In any event, at the time of the State Water Board's denial, there was a dispute regarding which public agency should handle CEQA compliance, the District or the CPUC. The Governor's Office of Planning and Research eventually determined that the CPUC, which would license the TE/VS interconnect, was the proper lead agency for CEQA purposes.

After this determination, Nevada Hydro applied to the CPUC for a Certificate of Public Convenience and Necessity for the TE/VS interconnect. The CPUC announced that it would analyze both the TE/VS interconnect and the LEAPS project under CEQA and prepare an appropriate EIR. The CPUC explained, "Under CEQA, the lead agency must evaluate the impacts of an entire project, even if the agency does not have authority over all aspects of the project. The LEAPS project is dependent on the TE/VS Project; therefore, the LEAPS project is a connected action that must be considered." In the CPUC's view, evaluating the entire project made logical sense as well: "[T]he CPUC's decisions regarding the proposed TE/VS Project must be made in light of the impacts of both projects, because the proposed TE/VS Project would facilitate development of the proposed LEAPS Project." The CPUC explained that its EIR was intended to satisfy the requirements for water certification by State Water Board: "The EIR being prepared by the CPUC is intended to provide sufficient information and analysis of the Proposed Project for the [State Water Board] to be able to use the EIR in its certification issuance process."

In the meantime, the District responded to Nevada Hydro's request that the State Water Board reconsider its denial with a letter to the Board supporting the denial. Noting this divergence between the District and Nevada Hydro, and other evidence of long-simmering disagreements between the two entities, FERC asked the District and Nevada Hydro to provide just cause why their joint application for a FERC license for the LEAPS project should not be dismissed.

Nevada Hydro responded by letter, requesting that FERC not dismiss the application. Nevada Hydro's letter summarized the potential benefits of the LEAPS project for the power grid (storing and stabilizing electricity supply) and for the District (compensation for its water management services). Nevada Hydro stated that it had met every requirement for a FERC license except water quality certification from the State Water Board, and explained that it planned to obtain certification from the State Water Board using the EIR that the CPUC was preparing for the TE/VS interconnect and the LEAPS project.[4] Nevada Hydro contended that pursuing the TE/VS interconnect made it more likely that the LEAPS project would be economically viable, because the cost of the TE/VS interconnect would not be borne by the LEAPS project alone. Nevada Hydro argued that limiting the TE/VS interconnect to electricity flowing only to or from the LEAPS project, as a primary line under FERC's jurisdiction, "would be economically wasteful and deprive the grid of a highly useful transmission asset."

_____

[4] Nevada Hydro also noted that it had filed a challenge to the State Water Board's denial in superior court, which was pending. Nevada Hydro believed that FERC's own environmental analysis should have been sufficient under CEQA for the State Water Board to issue water quality certification. Nevada Hydro later dismissed the challenge.

7

The District, also responding by letter, expressed its concern that it lacked the statutory authority to pursue the TE/VS interconnect as a stand-alone project because the TE/VS interconnect would transport electricity independent of the LEAPS project. The District stated, "[Nevada Hydro's] pursuit of a stand-alone transmission project is consistent with neither the District's historical position nor with its current statutory authority." The District argued that Nevada Hydro's pursuit of the TE/VS interconnect was hindering the successful prosecution of a FERC license for the LEAPS project. The District explained why it believed the State Water Board's earlier denial of water certification was proper, and expressed concern that the CPUC's analysis of the LEAPS project would also be insufficient to obtain water quality certification. The District's letter concluded as follows: "[T]he District reiterates its status as a municipal water district whose authority is defined and limited by the state Legislature. Although the District has clear authority to pursue hydroelectric projects and transmission lines necessary or convenient for the delivery of hydroelectric power, the type of stand-alone transmission project apparently envisioned by [Nevada Hydro] is one that the District cannot pursue."

FERC, through a director, dismissed the joint application for the LEAPS project. The director's order stated, "Based on our review of both [the District's] and Nevada Hydro's responses and the 1997 Development Agreement between Nevada Hydro and [the District], it is clear that [the District's] goal is to develop the hydroelectric project and improve the water quality of Lake Elsinore through the operation of that project. On the other hand, Nevada Hydro's primary interest is in the TE/VS transmission line." The

8

director's order concluded, "The co-applicants' divergent responses to the . . . just cause letter further clarify that the co-applicants have different goals, that they have been unable to work together in the past, and that they likely would be unable to do so if issued a license for the project. Moreover, the non-primary transmission line that Nevada Hydro now seeks to construct is beyond our jurisdiction to authorize as a stand-alone line. Based on these factors, it would be unreasonable to expend further public resources on this matter."

Several days later, the District provided Nevada Hydro with notice of events of default under the Development Agreement. The notice also purported to terminate the Development Agreement. In the notice, the District alleged that Nevada Hydro had failed to reasonably prosecute the FERC license, failed to pay permitting fees to the State Water Board, and failed to abide by other obligations in the Development Agreement. The District later paid the State Water Board fees referenced in the letter.

Nevada Hydro requested that the full commission rehear the director's decision to dismiss the joint application. The District filed a motion to respond, which the commission granted. In a comprehensive order, the commission denied rehearing.

The commission's order denying rehearing examined the history of the LEAPS project, the positions of the parties, and the propriety of the director's action dismissing the joint application. The commission emphasized that the director's decision to dismiss the joint application was not based on the merits of the LEAPS project or the TE/VS transmission line. The commission explained that "the Director did not dismiss the application because Nevada Hydro decided to develop the TE/VS as an open-access line

9

or because the TE/VS, as a stand-alone transmission line, would not be subject to Commission jurisdiction, as Nevada Hydro asserts. In referring to Nevada Hydro's focus on the certification of TE/VS as a line that the Commission could not license, the Director was addressing the contrast between Nevada Hydro's priorities and those of the District: as he stated, the District has made it clear that it has no interest in pursuing a transmission line other than a primary line, while Nevada Hydro has insisted that limiting it to construction of a primary line would undermine the successful development of the LEAPS Project. It is this conflict in priorities and objectives that was the basis for the Director's dismissal." (Footnote omitted.) The commission stated that whether "the District's concerns are well-founded or consistent with its earlier position is not relevant to our review of the Director's order; the Director dismissed the application not because the District's concerns were necessarily valid but because the co-applicants' long-standing disagreement suggests that they would be unlikely to cooperate as licensees." (Footnote omitted.)

The commission noted the inconsistency in the parties' responses to the Director's order: "It is worth noting that the District did not file a request for rehearing of the dismissal order or oppose the dismissal in its response to Nevada Hydro's rehearing request. We must infer from this that the District has no objection to the dismissal. The District's failure to object to dismissal of the application, in contrast to Nevada Hydro's strong objection to it, only reinforces the conclusion that the co-applicants have very different attitudes about the project proposal as it has developed, such that they could not be expected to cooperate as co-licensees."

10

After the commission issued its order denying rehearing, Nevada Hydro filed a new application for a FERC license for the LEAPS project, in its own name. Several months later, the District's staff recommended to its board of directors that the District file a notice of intent to file a competing application for the LEAPS project. The District's staff believed that such a notice would allow the District more input into Nevada Hydro's pending application. The District's board of directors did not adopt the recommendation. The minutes of the board of directors meeting reflect several directors' concerns that public sentiment was neutral or opposed to the LEAPS project.

The District later provided a second notice of default under the Development Agreement. The second notice was based on Nevada Hydro's alleged failure to pay additional fees to the State Water Board. The District contended that Nevada Hydro's obligation to pay these additional fees arose before the District's termination of the Development Agreement.

Several months later, Nevada Hydro brought this action. In its complaint, Nevada Hydro alleged a single cause of action for breach of contract against the District. Nevada Hydro's complaint recounted the history of the LEAPS project and the related proceedings before the State Water Board, FERC, and the CPUC. In particular, the complaint described the District's response to FERC's just cause letter, which, Nevada Hydro alleged, failed to support the joint LEAPS application and wrongfully claimed that Nevada Hydro was pursuing the TE/VS transmission line to the exclusion of water quality certification for the LEAPS project. As to the District's alleged breach of contract, Nevada Hydro made the following allegation: "The defendant, by reason of its

11

conduct alleged hereinabove, which resulted in the dismissal of the FERC application for licensure of the LEAPS Project, has breached the Development Agreement."

In response, the District filed (1) an answer generally denying Nevada Hydro's allegations and asserting various affirmative defenses; (2) a cross-complaint against Nevada Hydro for breach of contract, contribution, and declaratory relief; and (3) a special motion to strike, or anti-SLAPP motion, under section 425.16. In its anti-SLAPP motion, the District argued that Nevada Hydro's claim for breach of contract arose from acts in furtherance of the District's right of petition or free speech, i.e., its responses to FERC's just cause letter and Nevada Hydro's request for rehearing. (§ 425.16, subd. (b)(1).) The District further argued that Nevada Hydro could not show a probability that it would prevail on its claim because the District's responses were not the cause of FERC's dismissal of the joint application. (*Ibid.*) Nevada Hydro opposed the District's anti-SLAPP motion, arguing that the District's wrongful conduct was not limited to its FERC responses. Instead, the responses were merely evidence of the District's breaches. Nevada Hydro also contended that the District's conduct fell within the commercial speech exception to the anti-SLAPP statute under section 425.17, subdivision (c), and that Nevada Hydro could show a probability of prevailing on its claim.

The trial court granted the District's anti-SLAPP motion. The court found that Nevada Hydro's claim arose from an act in furtherance of the District's right of petition or free speech, and that the commercial speech exception did not apply. The court also found that Nevada Hydro had not shown a probability of prevailing on its claim. The

court characterized the District's FERC responses as "simply informational" and did not believe that they constituted breaches of the Development Agreement.  The court also determined that Nevada Hydro had not provided evidence of its own substantial performance or excuse for nonperformance, i.e., its failure to pay required fees to the State Water Board under the Development Agreement.

The court dismissed Nevada Hydro's complaint and awarded the District its reasonable attorney's fees under section 425.16, subdivision (c).  Nevada Hydro appeals.

DISCUSSION

I

Section 425.16, subdivision (b)(1), provides as follows: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  The statute "requires the court to engage in a two-step process.  First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon Enterprises v. Consumer Cause*, *Inc.* (2002) 29 Cal.4th 53, 67.)  "If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."  (*Ibid.*)

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute--i.e., that arises from protected speech or petitioning *and* lacks even minimal merit--is a

13

SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).) If Nevada Hydro demonstrates a probability of prevailing on its claim for breach of contract, therefore, its claim is not a SLAPP and may not be stricken as such. (See *ibid.*; see also § 425.16, subd. (b)(1).) We review *de novo* the trial court's determination that Nevada Hydro did not demonstrate a probability of prevailing. (*Oasis West Realty*, *LLC v. Goldman* (2011) 51 Cal.4th 811, 820; *Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1436.)

"In order to establish a probability of prevailing on the claim [citation], a plaintiff responding to an anti-SLAPP motion must ' "state[] and substantiate[] a legally sufficient claim." ' [Citation.] Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker*, *Covert & Chidester* (2002) 28 Cal.4th 811, 821.) "[T]he plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." (*Integrated Healthcare Holdings*, *Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 527; see *Roberts v. Los Angeles County Bar Association* (2003) 105 Cal.App.4th 604, 613.)

"In making a probability of prevailing assessment, a court evaluates the pleadings and evidentiary submissions of both parties. [Citations.] But as explained by our Supreme Court, we do not weigh the competing evidence: '[T]he court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats

14

the plaintiff's attempt to establish evidentiary support for the claim. [Citation.] In making this assessment it is "the court's responsibility . . . to accept as true the evidence favorable to the plaintiff . . . ." [Citation.] The plaintiff need only establish that his or her claim has "minimal merit" [citation] to avoid being stricken.' [Citation.] Our Supreme Court has described the plaintiff's probability of prevailing obligation: '[The statute] requires only "a minimum level of legal sufficiency and triability[.]" [Citation.]' [Citation.]" (*Anschutz Entertainment Group, Inc. v. Snepp* (2009) 171 Cal.App.4th 598, 638-639 (*Anschutz*).) "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' [Citation.]" (*Oasis West Realty*, *LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820.)

II

A

We assess Nevada Hydro's claim for breach of contract under the substantive law governing that cause of action. "The standard elements for a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. [Citation.]' [Citation.]" (*Wall Street Network*, *Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1179 (*Wall Street*).)

For purposes of this appeal, the District does not appear to dispute that the Development Agreement was a valid and enforceable contract and that Nevada Hydro

15

has suffered damages.[5]  Based on our review, we similarly conclude that Nevada Hydro has established a probability of prevailing on the first and fourth elements of its breach of contract claim.  We therefore address only the disputed second and third elements below.[6]

B

The second element of Nevada Hydro's breach of contract claim requires evidence of Nevada Hydro's performance or excuse for nonperformance.  (*Wall Street*, *supra*, 164 Cal.App.4th at p. 1179.)  Nevada Hydro provided admissible evidence of its efforts, over more than a decade, to fulfill its obligations under the Development Agreement to develop the LEAPS project.  For example, Nevada Hydro applied to FERC for a license, which required substantial time, effort, and money to prepare.  Nevada Hydro pursued other required licenses and permits from additional government agencies, as well.  As part of the FERC licensing process, Nevada Hydro submitted annual applications to the State Water Board for water quality certification.  When certification was denied, Nevada Hydro filed a challenge to the State Water Board's action in superior court.  Nevada

---

[5]     The District raises one argument that could be interpreted as bearing on causation, although it is not denominated as such.  We address this argument together with the third element in section II.C., *post*.

[6]     The District contended for the first time at oral argument that its statements to FERC are protected by the absolute litigation privilege (Civ. Code, § 47, subd. (b)), and that Nevada Hydro thus cannot demonstrate a probability of prevailing.  Because the District did not include this argument in its briefing, and raised it for the first time at oral argument, we decline to consider its merits.  (*Palp, Inc. v. Williamsburg National Insurance Co.* (2011) 200 Cal.App.4th 282, 291, fn. 2 [" 'We do not consider arguments that are raised for the first time at oral argument.' "].)

16

Hydro also secured an environmental review of the LEAPS project under CEQA by the CPUC. Nevada Hydro's vice president estimated that Nevada Hydro had spent approximately $24 million in development costs in connection with the LEAPS project. This evidence constitutes a prima facie showing of Nevada Hydro's performance under the Development Agreement.

The District argues that Nevada Hydro has not made a prima facie showing of performance because Nevada Hydro materially breached the Development Agreement by failing to pay approximately $260,000 in State Water Board fees for the years 2010-2011 and 2011-2012. In order to rebut Nevada Hydro's prima facie showing, the District would have to establish that Nevada Hydro's alleged breach forecloses Nevada Hydro's breach of contract claim as a matter of law. (See *Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3 [" '[We] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' "]; see also *Anschutz*, *supra*, 171 Cal.App.4th at p. 638)

"When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277 (*Brown*).) "Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact." (*Ibid.*) Only where reasonable minds could not differ on the question of materiality may the issue be resolved as a matter of law. (*Insurance Underwriters Clearing House*, *Inc. v. Natomas Co.* (1986) 184 Cal.App.3d 1520, 1526-1527.) We note that the District has alleged, at most, a partial

17

breach of Nevada Hydro's obligations under the Development Agreement. "Whether a partial breach of a contract is material depends on 'the importance or seriousness thereof and the probability of the injured party getting substantial performance.' [Citations.]" (*Brown*, *supra*, 192 Cal.App.4th at p. 278.)

On the current record, a reasonable trier of fact could determine that Nevada Hydro's alleged breach was not material. Nevada Hydro spent over $24 million on development in connection with the LEAPS project. The unpaid State Water Board fees were comparatively small, approximately one percent of that total. In light of Nevada Hydro's history of performance, and its expenditure of $24 million, it would be reasonable for a trier of fact to conclude that Nevada Hydro's alleged breach was not so serious that the District could be entirely excused from its own obligations to perform under the Development Agreement. (See *Brown*, *supra*, 192 Cal.App.4th at p. 277.) Moreover, even after the alleged breach, Nevada Hydro continued to actively pursue the LEAPS project before FERC and through the environmental review conducted by the CPUC. In light of these activities, District has not shown that it could not have received substantial performance of the Development Agreement even with Nevada Hydro's alleged breach.[7] (See *id.* at p. 278.)

---

[7] The District did not give notice of Nevada Hydro's failure to fulfill its obligation to pay the first portion of the State Water Board fees until after the District's own alleged breach and after FERC had dismissed the joint application. The timing of the District's notice would also support a finding that Nevada Hydro's alleged breaches were immaterial because the District did not raise Nevada Hydro's alleged breaches until after the LEAPS project had failed.

18

The District contends, in passing, that Nevada Hydro also breached the Development Agreement by failing to timely pursue the FERC license. The District does not explain this assertion, and we find it unpersuasive. Based on the current record, and given the many hurdles to FERC licensing, some of which appear to have been exacerbated by the District itself, a reasonable trier of fact could find that Nevada Hydro did not breach the Development Agreement by failing to timely pursue the FERC license.

C

The third element of Nevada Hydro's breach of contract claim requires evidence of the District's breach. (*Wall Street*, *supra*, 164 Cal.App.4th at p. 1179.) "The *wrongful*, i.e., the unjustified or unexcused, failure to perform a contract is a *breach*." (1 Witkin, Summary of Cal. Law. (10th ed. 2005) Contracts, § 847, p. 935.) "Ordinarily, a breach is a result of an intentional act, but *negligent performance* may also constitute a breach, giving rise to alternative contract and tort actions." (*Ibid.*)

Nevada Hydro relies primarily on the District's response to FERC's just cause letter to establish the District's breach. Nevada Hydro contends that the District's response undermined Nevada Hydro's efforts to obtain a FERC license for the LEAPS project and thus breached the District's obligations under the terms of the Development Agreement to "make every reasonable effort necessary or appropriate to effectuate" Nevada Hydro's development rights and to "use its reasonable best efforts to obtain all permits . . . necessary in the reasonable opinion of [Nevada Hydro], desirable for the purpose of . . . enabling [Nevada Hydro] to proceed with development of the Project."

19

The District contends that its response to FERC's just cause letter was not a breach of the Development Agreement because FERC requested the District's input, and the District did not expressly advocate that the joint application be dismissed. On the record before us, we disagree that these facts establish as a matter of law that the District did not breach the Development Agreement. (See *Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.) The District has provided no authority to support its argument that the mere fact that FERC requested the District's input immunizes the District from any subsequent breach of contract claim based on the District's response, and we find that argument unpersuasive.[8] To the contrary, the Development Agreement required the District to "make every reasonable effort necessary or appropriate to effectuate" Nevada Hydro's

---

[8] The implicit basis for the District's argument appears to be that a breach of contract action can never rest on statements made in furtherance of a party's right of petition or free speech. In its brief, the District quotes a statement from the trial court to that effect: "I am just not sure you can ever get a breach of contract out of what they said to FERC, and that is what I'm really struggling with, that that wouldn't fall under their free speech rights at that point." The Supreme Court has expressly rejected this view: "[P]laintiffs fall prey . . . to the fallacy that the anti-SLAPP statute allows a defendant to escape the consequences of wrongful conduct by asserting a spurious First Amendment defense. [Citation.] In fact, the statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning [citation]; it subjects to potential dismissal only those actions in which the plaintiff cannot 'state[] and substantiate[] a legally sufficient claim' [citation]." (*Navellier*, *supra*, 29 Cal.4th at p. 93; see *DaimlerChrysler Motors Co. v. Lew Williams, Inc.* (2006) 142 Cal.App.4th 344, 351-352 [finding probability of prevailing on breach of contract claim after determining that the claim was based on the opposing party's constitutional right to petition].) Indeed, the District's argument would render the second prong of the anti-SLAPP statute entirely superfluous, since *any* action that satisfied the first prong, i.e., that arose from an act in furtherance of a party's right of petition or free speech, would have to be dismissed under the District's interpretation.

20

development rights. The Development Agreement did not exclude the District's direct interactions with FERC from its scope.

FERC's letter asked the parties to "provide an explanation why the license application for the LEAPS Project should not be dismissed." A reasonable trier of fact could find that the District's response -- which highlighted the disagreements between the parties, drew attention to the stand-alone TE/VS transmission line, expressed concern over Nevada Hydro's ability to satisfy the conditions for the FERC license, and likely exacerbated FERC's concerns over the parties' ability to work together as co-licensees -- was inconsistent with the District's obligations under the Development Agreement. Indeed, a reasonable trier of fact could find that the District's focus on the stand-alone TE/VS transmission line in its response to FERC's request was improper because FERC did not have the authority to license such a line in any event, as FERC well understood. The fact that the District did not expressly advocate for dismissal is irrelevant. A reasonable trier of fact could find that the District's response hindered, rather than "effectuate[d]," Nevada Hydro's right to develop the LEAPS project, contrary to the District's obligations under the Development Agreement.[9]

---

[9] Indeed, as previously noted, in its review of the proceedings, FERC reached a similar conclusion: "It is worth noting that the District did not file a request for rehearing of the dismissal order or oppose the dismissal in its response to Nevada Hydro's rehearing request. We must infer from this that the District has no object to the dismissal. The District's failure to object to dismissal of the application, in contrast to Nevada Hydro's strong objection to it, only reinforces the conclusion that the co-applicants have very different attitudes about the project proposal as its has developed, such that they could not be expected to cooperate as co-licensees."

21

The District also contends that its response to FERC's just cause letter was not a breach because the Development Agreement did not apply to a stand-alone TE/VS transmission line. In making this argument, the District fails to acknowledge that the FERC license under consideration was for the LEAPS project itself, which was the object of the Development Agreement. As FERC recognized, it could not license the stand-alone TE/VS transmission line: "[A]uthorization and construction of the transmission line is *not dependent* on the status of the license application filed with [FERC]." (Emphasis added.) Whatever the District's attitude toward that line, it was not part of the FERC license. The Development Agreement obligated the District to support Nevada Hydro in its pursuit of the FERC license for the LEAPS project. For the reasons that we have explained, a reasonable trier of fact could find that the District's response breached this obligation.

In a related vein, the District argues that its response was "not the cause of FERC's ultimate dismissal of the parties' application" because Nevada Hydro's pursuit of the stand-alone TE/VS transmission line "took the project outside of the FERC's jurisdiction." " 'The test for causation in a breach of contract . . . action is whether the breach was a substantial factor in causing the damages.' " (*Haley v. Casa Del Rey Homeowners Ass'n* (2007) 153 Cal.App.4th 863, 871.) " 'The term "substantial factor" has no precise definition, but "it seems to be something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result." ' " (*Id.* at pp. 871-872.)

Based on the current record, the evidence amply supports a finding that the District's response was a substantial factor in causing the dismissal of the joint FERC application and, therefore, Nevada Hydro's alleged damages. As we have explained, the FERC license at issue covered only the LEAPS application itself, not the stand-alone TE/VS transmission line, as FERC recognized. The FERC order denying rehearing, issued by the commission itself, expressly rejected the idea that Nevada Hydro's pursuit of the stand-alone line was the reason for the dismissal of the joint application: "[T]he Director did not dismiss the application because Nevada Hydro decided to develop the TE/VS as an open-access line or because the TE/VS, as a stand-alone transmission line, would not be subject to [the FERC's] jurisdiction . . . . Nor did the Director imply that a hydro facility could not be connected with an open access, non-primary transmission line . . . ." In the commission's view, the dismissal rested solely on the divergence of interests demonstrated by the parties' responses and the apparent inability of the parties to cooperate. Because the District's response created, or at least highly exacerbated, this divergence, a reasonable trier of fact could find that the District's response was a substantial factor in causing the dismissal. (See *DaimlerChrysler Motors Co. v. Lew Williams, Inc.*, *supra*, 142 Cal.App.4th at p. 354; see also *Haley v. Casa Del Rey Homeowners Ass'n*, *supra*, 153 Cal.App.4th at pp. 871-872.) Nevada Hydro has thus made a prima facie showing on this element of its breach of contract claim, as well.

D

Based on the foregoing, we conclude that Nevada Hydro has stated and substantiated a prima facie claim for breach of contract against the District. Nevada

23

Hydro has therefore established a probability of prevailing on that claim. (See *Wilson v. Parker*, *Covert & Chidester, supra*, 28 Cal.4th at p. 821.) Because such a showing requires reversal of the trial court's order granting the District's anti-SLAPP motion (see *Navellier*, *supra*, 29 Cal.4th at p. 88), we need not decide whether Nevada Hydro's claim arises from an act on the part of the District in furtherance of its right to petition or free speech (§ 425.16, subd. (b)(1)) or whether the commercial speech exception to the anti-SLAPP statute applies (§ 425.17, subd. (c)). Even assuming that the trial court correctly decided these two issues, the District's anti-SLAPP motion should have been denied. (See *Navellier*, *supra*, 29 Cal.4th at p. 88.)

DISPOSITION

The order is reversed. The court is directed to enter a new and different order denying the District's special motion to strike under section 425.16.

AARON, J.

WE CONCUR:


NARES, Acting P. J.


O'ROURKE, J.

24