Filed 2/24/26  Stockdale Villa Mobile Home Park v. Chavez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STOCKDALE VILLA MOBILE HOME PARK, LTD., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARIO CHAVEZ-CHAVEZ, et al., <br><br> Defendants and Appellants. | F089435 <br><br> (Super. Ct. No. BCV-24-102326) <br><br> **OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Mario Chavez-Chavez, in pro. per., for Defendant and Appellant Mario Chavez-Chavez.

Seanna Ramirez, in pro. per., for Defendant and Appellant Seanna Ramirez.

Rosing Pott & Strohbehn and Ian R. Friedman for Plaintiff and Respondent.

-ooOoo-

Plaintiff and respondent Stockdale Villa Mobile Home Park filed a breach of contract complaint against Mario Chavez-Chavez and his adult daughter Seanna Ramirez (defendants and appellants).  Mario Chavez-Chavez and Seanna Ramirez filed an anti-

SLAPP[1] motion seeking dismissal of the complaint. The trial court denied the anti-SLAPP motion. Mario Chavez-Chavez and Seanna Ramirez appealed. We affirm.

## FACTS AND PROCEDURAL HISTORY

### *Introduction*

This matter has a complicated background. The plaintiff in the underlying case is Stockdale Villa Mobile Home Park, Ltd. (Stockdale), and defendants are Mario Chavez-Chavez (Mario) and his adult daughter, Seanna Ramirez (Seanna). Non-party Adriana Ramirez (Adriana) is also implicated in this matter.[2] Adriana is married to Mario and is Seanna's mother. Stockdale has indicated that it inadvertently failed to name Adriana Ramirez as a defendant when it commenced this action in the trial court and that it intends to serve Adriana Ramirez (as a Doe defendant) should this matter be remanded for further proceedings in the trial court.

Stockdale filed the underlying complaint in Kern County Superior Court on July 11, 2024, against Mario, Seanna, and a few Doe defendants. The complaint alleged a single cause of action for breach of contract. The complaint noted: "The action is brought as a Limited Civil Case under Code of Civil Procedure Section 85 because the 'amount in controversy does not exceed thirty-five thousand dollars ($35,000) … exclusive of attorneys' fees, interest, and costs.' " The complaint sought "liquidated damages of not less than $15,000," among other things.

The defendants, Mario and Seanna, were represented by attorney Shiloh Parker (also known as Shiloh Betancourt) in this action. On December 19, 2024, Mario and Seanna filed a special motion to strike Stockdale's breach-of-contract complaint (anti-

---

[1] " ' "SLAPP" is an acronym for "strategic lawsuit against public participation." ' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 785, fn. 1.)

[2] We will refer to defendants by their first names for purposes of clarity; no disrespect is intended.

2.

SLAPP motion), pursuant to Code of Civil Procedure section 425.16.[3]  Mario and Seanna submitted declarations from attorney Shiloh Parker and Adriana, respectively, in support of their anti-SLAPP motion.  Stockdale filed an opposition, supported by a declaration from Harvey Miller, its president.  On January 27, 2025, the trial court held a hearing on Mario and Seanna's anti-SLAPP motion and denied it.[4]  On March 5, 2025, attorney Shiloh Parker filed a notice of appeal on behalf of Mario and Seanna, commencing the instant appeal.

### *The Parties' Prior Relationship and the Confidential Settlement Agreement and General Release Underlying Stockdale's Instant Breach of Contract Complaint*

Mario and Adriana formerly worked at Stockdale's mobile home park in Bakersfield as resident property managers, starting in 2017.  It appears that Mario, Adriana, and Seanna lived in a mobile home at the mobile home park as a benefit of Mario and Adriana's employment with Stockdale.  Mario and Adriana quit their employment with Stockdale in February 2023 and March 2023, respectively.  Shortly after they quit their employment, Stockdale served them a notice to vacate the mobile home but, evidently, they did not timely do so.  A number of lawsuits involving the parties followed; Mario, Adriana, and Seanna were represented in all the lawsuits by attorney Shiloh Parker.

First, on April 12, 2023, Adriana filed a civil action against Stockdale (and some of its employees) in the Los Angeles County Superior Court.  Adriana asserted, *inter alia*, employment-related claims under the Fair Employment and Housing Act (FEHA) and claims for wrongful eviction and breach of the covenant of quiet enjoyment of premises.

Second, on April 20, 2023, Stockdale filed an unlawful detainer action against Mario and Adriana in the Kern County Superior Court.  Stockdale sought to have Mario

---

[3] Subsequent undesignated statutory references are to the Code of Civil Procedure.

[4]  Although a court reporter was present, appellants Mario and Seanna have not provided a reporter's transcript of the hearing in the record on appeal.

and Adriana vacate the mobile home provided to them as part of their compensation when employed by Stockdale. On May 22, 2023, judgment was entered in favor of Stockdale. Stockdale was awarded holdover damages in the amount of $2,916.55 and costs in the amount of $340. In addition, Stockdale sought $13,860 in attorney fees.

Third, on August 21, 2023, Stockdale filed, in the Kern County Superior Court, a breach of contract action against Mario and Adriana seeking $4,383.88 for damage to the mobile home and to recoup loans made to them in the amount of $7,950.

Fourth, on October 4, 2023, Seanna filed a civil action against Stockdale (and some of its employees) in the Los Angeles County Superior Court alleging, *inter alia*, claims under FEHA as well as claims for wrongful eviction and breach of the covenant of quiet enjoyment of the premises.

On October 26, 2023, Mario, Adriana, and Seanna entered into a "Confidential Settlement Agreement and General Release of All Claims" (settlement agreement or confidential settlement agreement) with Stockdale and its employees and/or officers. The settlement agreement reflected a global settlement resolving all four of the aforementioned cases. The settlement agreement was signed by Mario, Adriana, and Seanna as well as by Harvey Miller on Stockdale's behalf.

The settlement agreement included a confidentiality and nondisclosure provision. Specifically, paragraph 5.1 of the agreement provided:

> "Insofar as permitted under the law, including C.C.P. Section 1001, 1002 and Government Code Section 12946.5, the Parties hereby agree that they will not, without compulsion of legal process, *disclose to any third party* any of the terms of this Agreement, including the negotiation of it, except that they may disclose such information to any spouse, attorneys, accountants or other professional advisors to whom disclosure is necessary to effect the purposes for which they consulted such professional advisor(s). The Parties agree that, in connection with any disclosure permitted hereunder, they shall cause such third party to whom disclosure has been made to agree to comply with this covenant of confidentiality and non-disclosure and, in the event such third party breaches this covenant of confidentiality and non-disclosure, such breach shall be deemed to have

4.

been committed by the disclosing party. The Parties hereby understand that nothing contained herein shall preclude them from acknowledging that the *dispute has been resolved.*" (Italics added.)

The settlement agreement also contained a liquidated damages provision. Specifically, paragraph 5.3 of the settlement agreement provided: "The Parties stipulate that because it would be difficult, if not impossible, to ascertain damages arising out of a breach that liquidated damages in the amount of Five Thousand Dollars and Zero Cents ($5,000.00) will be awarded per breach. The Parties agree that injunctive relief, additional monetary damages and reasonable attorneys' fees and costs are also available under this Agreement for enforcing this provision."

The settlement agreement further provided: "No waiver of any term, provision, or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be, or shall constitute, a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver*, and no waiver shall be binding unless executed in writing by the Party making the waiver*." (Italics added.)

### Stockdale's Instant Complaint

As noted, on July 11, 2024, Stockdale filed a limited, breach-of-contract complaint against Mario and Seanna, and noted that Adriana, one of the Doe defendants, would also be served in the action. In its complaint, Stockdale alleged that defendants had breached the confidentiality and nondisclosure provision of the settlement agreement. More specifically, the complaint alleged: "Defendants breached Section 5.1 of the Confidential Settlement Agreement at least three times by allowing their attorney, Shiloh A. Parker, Esq., to publicly disclose the entire Confidential Settlement Agreement on February 9, 2024, April 19, 2024, and most recently on May 6, 2024."

Stockdale's complaint further alleged: "While Ms. Parker was not a signatory to the Confidential Settlement Agreement, Defendants, as Ms. Parker's clients, agreed to cause Ms. Parker, as a permitted recipient of confidential information, to 'agree to

comply with [the] covenant of confidentiality and non-disclosure.' Defendants further agreed that Ms. Parker's breach 'shall be deemed to have been committed' by Defendants as the disclosing party.' Ms. Parker is not a party to this action because she did not sign the Confidential Settlement Agreement."

Stockdale's complaint stated: "Stockdale has suffered damages legally caused by Defendant's breach of the Confidential Settlement Agreement which consist of, at minimum, $15,000 as liquidated damages pursuant to paragraph 5.3 of the Confidential Settlement Agreement." The complaint continued: "Stockdale will continue to suffer additional damages by any additional breaches by Defendants of the Confidential Settlement Agreement." The complaint added: "Stockdale has also been damaged by having to retain an attorney to pursue these liquidated damages and such attorney's fees are recoverable under paragraph 5.3 of the Confidential Settlement Agreement."

Although the case was intended as a limited civil matter, owing to some technical issues, the superior court's clerk's office identified it as an unlimited civil matter. However, following the first case management conference on January 14, 2025, the trial court issued an order correcting the error. The court's order noted: "Based on the allegations in the complaint, including the prayer for relief, and after conferring with counsel at the initial case management conference, on the court's own motion pursuant to Code of Civil Procedure section 403.040(a), this case is reclassified as a limited civil case. This designation shall continue throughout the litigation absent further order of the court."

### Mario and Seanna's Anti-SLAPP Motion

As noted, Mario and Seanna, represented by attorney Shiloh Parker in this action, filed an anti-SLAPP motion seeking dismissal of Stockdale's breach-of-contract complaint. In their anti-SLAPP motion papers, Mario and Seanna clarified that, after she quit her job with Stockdale, Adriana applied for unemployment benefits through the Employment Development Department (EDD). Adriana was denied benefits and

6.

appealed to the Unemployment Insurance Appeals Board.  In this context, Adriana had appeal hearings before Administrative Law Judge (ALJ) Jeffery Kolling on the issue of whether she left her employment with Stockdale voluntarily without good cause.

Mario and Seanna's anti-SLAPP motion papers further noted that the disclosures of the settlement agreement at issue in Stockdale's instant, breach of contract complaint took place in connection with Adriana's hearings before ALJ Kolling.  Attorney Shiloh Parker also represented Adriana in her benefits application process, including at the hearings before ALJ Kolling.  Stockdale's president, Harvey Miller, appeared at the hearings on Stockdale's behalf.

Adriana submitted a declaration in support of Mario and Seanna's anti-SLAPP motion.  In her declaration, Adriana stated that "[she] was on the calls for all of the hearings for [her] appeal with the EDD before [ALJ] Jeffery Kolling."  Adriana further stated:

> "Mr. Harvey Miller appeared on behalf of Stockdale for all of the hearings. At the first hearing, Mr. Miller told [ALJ] Jeffery Kolling that I was unable to collect unemployment benefits because the settlement agreement that we signed did not allow me to collect unemployment benefits.  Mr. Miller explained to [ALJ] Jeffery Kolling that Section 2 and Section 2.1 of the settlement agreement prevented me from collecting benefits because I had released all claims against Plaintiff in the settlement agreement.  In response, [ALJ] Jeffery Kolling asked my attorney, Ms. Parker, to respond to Mr. Miller's argument.  Ms. Parker argued that [the] settlement agreement did not apply to my application for benefits because I filed the application for benefits before[] we signed the settlement agreement, and the agreement did not have any language showing that I would not be able to collect unemployment benefits.  Therefore, [ALJ] Jeffery Kolling asked for a copy of the settlement agreement.  Mr. Miller agreed to me providing the [ALJ] with a copy of the settlement agreement via the EDD portal, and Mr. Miller did not object to me submitting a copy of the settlement agreement via the EDD portal."

Attorney Shiloh Parker also submitted a declaration in support of the anti-SLAPP motion.  Parker declared:  "As part of Adriana Ramirez's appeal [upon denial of her

7.

application for unemployment benefits], I appeared before [ALJ] Jeffery Kolling on her behalf at multiple hearings, including but not limited to February 9, 2024, April 19, 2024, and May 6, 2024 [i.e., the dates at issue in Stockdale's complaint]." Parker noted that Harvey Miller appeared on behalf of Stockdale "at all of the hearings before [ALJ] Jeffery Kolling." Parker further declared:

> "During the appeal hearings, Mr. Miller argued on behalf of Plaintiff Stockdale. Specifically, Mr. Miller argued that the settlement agreement at issue here barred the EDD Board from charging Plaintiff's EDD account with the department. To support his position, Mr. Miller disclosed [the] terms of the settlement agreement, including the term that Adriana Ramirez had released all claims against Plaintiff, which included her EDD claim. To assist [ALJ] Jeffery Kolling in deciding the issue, I argued that the settlement agreement was inapplicable for the EDD appeal because the application for EDD benefits was filed before the settlement agreement was signed, and there was no language in the settlement agreement that prospectively applied to an application for EDD benefits. To resolve the issue, a copy of the settlement agreement was provided to [ALJ] Jeffery Kolling, with the consent of Mr. Miller, to resolve the issue that Mr. Miller put [i]n controversy via a private communication portal with the EDD Board … Mr. Miller did not object to providing a copy of the settlement agreement to [ALJ] Jeffery Kolling via the private communication portal."

In addition, Parker declared: "Plaintiff bases its cause of action for breach of contract on an incorrect premise that I was the one who disclosed a copy of the settlement agreement to [ALJ] Kolling. That is incorrect. I was not the one who provided [ALJ] Kolling with a copy of the settlement agreement." Parker added: "Further, even though I was not the one who provided [ALJ] Kolling with a copy of the settlement agreement, the copy of the settlement agreement was provided to [ALJ] Kolling in the course of … Adriana Ramirez petitioning the EDD Board for unemployment benefits for an issue that Mr. Miller put in controversy and after Mr. Miller made the initial oral disclosure of the terms of the settlement agreement."

***Stockdale's Opposition to Mario and Seanna's Anti-SLAPP Motion***

On January 14, 2025, Stockdale filed an opposition to Mario and Seanna's anti-SLAPP motion. In its opposition, Stockdale first argued that "defendants are not permitted to file an anti-SLAPP motion in this limited-civil case." (Capitalization omitted.) Specifically, Stockdale argued: "Plaintiff [Stockdale] has sued Defendants [Mario and Seanna] seeking $15,000 via what is intended as a limited civil action to recover for breach of a settlement agreement's confidentiality provision. Case law is clear that Code of Civil Procedure 'section 92(d) precludes a defendant from bringing [an anti-SLAPP motion] in a limited civil case.' (*1550 Laurel Owner's Assn., Inc. v. Appellate Division of Superior Court* (2018) 28 Cal.App.5th 1146, 1158.)"

Stockdale further argued, with reference to the second prong of the anti-SLAPP statute and the substantive anti-SLAPP analysis, that Mario and Seanna's anti-SLAPP motion should be denied because "Stockdale can meet the minimal merit standard required to demonstrate a probability of prevailing on the merits."[5] (Boldface omitted.) More specifically, Stockdale argued: "[The] [a]nti-SLAPP [m]otion should be denied because it is premised only on a claim that Plaintiff's breach of contract cause of action is prohibited by the litigation privilege. Contrary to Defendants' assertion, however, the litigation 'privilege does not apply to an action for breach of contract where a party presents statements in litigation although the party has contracted to keep such statements confidential.' (*Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1490, 1495

---

[5] With respect to prong one of the anti-SLAPP statute—that is, whether the plaintiff's claim arises from petitioning activity—Stockdale conceded its breach of contract claim arose from petitioning activity. (See § 425.16, subdivision (b)(1).) Stockdale further noted: "Stockdale recognizes the Supreme Court has determined 'the mere fact the constitutional speech occurred in violation of a contract did not by itself preempt the application of the anti-SLAPP statute.' (*DaimlerChrysler Motors Co. v. Lew Williams, Inc.* (2006) 142 Cal.App.4th 344, 351 [citing *Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 [(*Navellier*)]). 'Rather, the issue of breach was to be addressed under the statute's merits prong.' (*Id.*)"

9.

[(*Wentland*)].)  Stockdale's claims thus have the requisite minimal merit required to demonstrate a probability of prevailing on the merits.  Defendants' [a]nti-SLAPP [m]otion should therefore be denied."

Stockdale explained:  " 'The Legislature's inclusion of a merits prong to the statutory SLAPP definition (§ 425.16, subd. (b)(1)) … preserves appropriate remedies for breaches of contracts involving speech by ensuring that claims with the requisite merit may proceed.  [Citations.]  Indeed, as the statute is designed and as [courts] have construed it, a defendant who in fact has validly contracted not to speak or petition has in effect "waived" the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract.'  (*Navellier, supra,* 29 Cal.4th at p. 94.)"  Stockdale concluded:  "Stockdale agrees with Defendants that the single breach of contract claim is appropriately analyzed under the second prong of the [a]nti-SLAPP analysis[,] where Stockdale can unequivocally demonstrate a probability of prevailing on the merits sufficient to require denial of the [a]nti-SLAPP [m]otion."

### Mario's Quickly-Filed Cross-Complaint

As noted, Stockdale's opposition to Mario and Seanna's anti-SLAPP motion was filed on January 14, 2025.  The next day, on January 15, 2025, Mario filed a cross-complaint for:  (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; and (3) unfair business practice.  Mario's cross-complaint sought "[i]n excess of $400,000 in damages," and specifically requested that the court reclassify the matter as an unlimited civil case.

Although the trial court had designated the matter as a limited civil case on January 14, 2025, upon receiving the cross-complaint, the court changed course.  On January 16, 2025, the court issued an order stating:  "The court recently reclassified this matter as a limited civil case on its own motion based on the allegations in the complaint, including the prayer for relief, and after conferring with counsel at the initial case management conference.  The court is now in receipt of a cross-complaint by defendant

MARIO CHAVEZ-CHAVEZ which would cause the matter to be reclassified as an unlimited civil case. Upon filing of the cross-complaint, the case is reclassified as an unlimited civil case. This designation shall continue throughout the litigation absent further order of the court."

### *Trial Court Denied Mario and Seanna's Anti-SLAPP Motion*

On January 27, 2025, the trial court held a hearing on Mario and Seanna's anti-SLAPP motion. The court announced its tentative decision in open court, heard argument from the parties, and adopted its tentative decision as its final ruling. The court ruled: "Motion to Strike Plaintiffs' Complaint for Damages, [p]ursuant to [Code of] Civil Procedure Section 425.16 is denied." The court issued a detailed, written decision explaining its reasoning on all relevant points.

The trial court analyzed Mario and Seanna's motion with respect to both prongs of the anti-SLAPP statute. As to the first prong, the court noted: "Stockdale agrees its breach of contract claim arises from petitioning activity and the court's analysis requires review of prong two under the [a]nti-SLAPP Statute. [¶] As both parties agree prong one is satisfied, a discussion is not necessary here."

       (i)      <u>Defendants' Disclosures Were Not Protected by the Litigation Privilege</u>

With respect to the second prong of the anti-SLAPP analysis, the court observed: "[Stockdale] argues that while [Mario and Seanna] raise several ancillary arguments in their [a]nti-SLAPP [m]otion, the central claim is essentially that they contend Stockdale cannot prevail on its single claim for breach of contract because that claim is barred by the litigation privilege. [Citation.] An identical argument was made, and rejected, in *Wentland v. Wass* (2005) 126 Cal.App.4th 1484."

The trial court next summarized the pertinent parts of *Wentland*, which clarified that the litigation privilege did not apply in an action for breach of contract where the breach of contract claim was premised on a party's presentation of statements in litigation although the party had previously contracted to keep such statements confidential. Under

11.

*Wentland*, a breach of contract action premised on the disclosure of statements that had contractually been rendered confidential, can potentially have merit and survive an anti-SLAPP challenge.

In analyzing this issue, the trial court further stated: "[Stockdale] contends that in reaching this decision [*Wentland*] relied on the reasoning of 'the Supreme Court majority in [*Navellier, supra,* 29 Cal.4th at page 94] that a defendant who contracts not to speak or petition has waived the right to anti-SLAPP protection if he later breached the contract.' ([*Wentland, supra,* 126 Cal.App.4th] at p. 1492 [citing [*Navellier*], *supra,* 29 Cal.4th at p. 94].)" The court added: "*Wentland* also relied on the finding in a later *Navellier* decision that 'the litigation privilege would not bar [a] breach of contract claim [premised on the breach of contracted-for confidentiality].' ([*Wentland*] at p. 1492 [citing *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 774 [(*Navellier II*)].)" (Italics added.)

The trial court continued:

> "[Stockdale] argues that here, [it] and Defendants agreed, 'They will not, without compulsion of legal process, disclose to any *third party* any of the terms of this Agreement [i.e., the settlement agreement], including the negotiation of it.' Stockdale and Defendants also agreed that if making a permitted disclosure to a 'spouse, attorneys, accountants or other professional advisors,' 'they shall cause such third party to whom disclosure has been made to agree to comply with this covenant of confidentiality and non-disclosure and, in the event such third party breaches this covenant of confidentiality and non-disclosure, such breach shall be deemed to have been committed by the disclosing party.' Defendants thereafter breached this agreement by allowing their only attorney, [Shiloh] Parker, to file the un-redacted Settlement Agreement in connection with the EDD proceedings. Defendants waived the right to disclose the agreement terms in exchange for an economic benefit and cannot now claim impunity for that breach under the litigation privilege."

The court noted it found Stockdale's arguments "persuasive" and credited Stockdale's position.[6]

---

[6] The trial court also pointed out: "[Stockdale] contend[s] that while Defendants cite several EDD specific cases showing that communications to the EDD are petitioning

12.

     (ii)    <u>Mario and Seanna did not Show, as a Matter of Law, that Stockdale</u>
                   <u>Waived the Confidentiality Provisions of the Settlement Agreement</u>

The trial court rejected Mario and Seanna's contention that Stockdale had waived the confidentiality provisions of the settlement agreement for purposes of the EDD proceedings. The court stated: "Defendants cite to *Navellier v. Sletten* (2002) 29 Cal.4th 82, arguing that unlike the [p]laintiffs in *Navellier*, [Stockdale] here waived its right[s] under the confidentiality provision in the settlement agreement." The court noted that defendants, Mario and Seanna, contended the waiver occurred "through the disclosures and acts of [Stockdale's president], Harvey Miller, [who raised] the issue of whether the settlement agreement prevented the EDD Board from charging [Stockdale's] EDD account[.]" The court added: "Defendants further argue that Stockdale was the first to disclose the terms of the settlement agreement (Section 2 and 2.1) to [ALJ] Jeffery Kolling during the [EDD] hearing[s] alleged in the complaint." The court continued: "Defendant[s] contend[] [Stockdale] consented to provide [ALJ] Jeffery Kolling a copy of the settlement agreement via a private communication portal so that [he] could adjudicate the issue, and by not objecting to the private communication sent to [him] with a copy of the settlement agreement."

The trial court also summarized Stockdale's counterarguments on the waiver issue. The court noted: "[Stockdale] contends paragraph 5.1 of the [s]ettlement [a]greement [that is, the confidentiality provision] expressly provides that 'nothing contained herein shall preclude [the parties] from acknowledging that the dispute has been resolved.' " Stockdale further argued that "there is no evidence that Miller stated anything more than that the case was settled," which "is expressly permitted by the parties' settlement [a]greement."

---

activity – a fact Stockdale does not dispute – *none of them refute that breach of contract claims are not subject to the litigation privilege.*" (Italics added.)

The trial court then analyzed the issue:  "Here, there is an obvious conflict between the parties [as to] what happened at the EDD hearing.  While Mr. Miller contends he only stated that the dispute was resolved, Ms. Parker contends there was more disclosed.  Notably here, the court is left only to rely on declarations, and there is no transcript from the EDD hearing[s]."  The court added:  "[Furthermore,] the court is … left with the issue of who disclosed portions of the agreement first.  Mr. [Miller] is arguing that Ms. Parker disclosed the [s]ettlment [a]greement to the EDD tribunal on her own volition, without compulsion of legal process, and for no apparent reason other than to attempt to disclose the terms of the [c]onfidential [s]ettlement [a]greement to the tribunal.  While Ms. Parker argues that it was Mr. [Miller] that raised the settlement agreement as a defense."  The court continued:  "It is impossible for the court at this stage to determine what actually happened at the EDD hearing when we are left to rely on competing declarations."

The trial court also referenced paragraph 11.2 of the settlement agreement, which provided that no waiver of any provision of the settlement agreement "shall be binding unless executed in writing by the Party making the waiver."  The court observed:  "Here, [Stockdale] expressly denied that [it] has ever waived the confidentiality agreement, or done so in writing.  [Stockdale] argues that Defendants do not submit any evidence that Stockdale has ever executed a waiver in writing and, as such, [Stockdale's] claims, which need only to have minimal merit, cannot be defeated by any argument of waiver."

In short, the court's analysis revealed it determined that Mario and Seanna had not shown, as a matter of law, that Stockdale had waived its rights under the confidentiality provisions of the settlement agreement.  (See *Santa Clara Valley Water District v. Century Indemnity Company* (2023) 89 Cal.App.5th 1016[, 1055]  ["waiver may be either

14.

express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right"].)[7]

>   (iii)   Evidence did not Show Defendants' Disclosures Were Made Under Compulsion of Legal Process

Next, the trial court addressed Stockdale's argument that Parker's disclosures of the settlement agreement were not made under compulsion of legal process. The court credited Stockdale's argument because Mario and Seanna did not make a contrary showing as a matter of law. The trial court noted:

> "[Stockdale] contends that Defendants argue in their moving papers that '[ALJ] Jeffery Kolling requested a copy of the [s]ettlement [a]greement to adjudicate an issue' allegedly before him and that, as such Defendants' attorney, Parker, was 'required to provide [ALJ] Jeffery Kolling a copy.' [Stockdale] contends that there is no competent evidence that [ALJ] Kolling ever asked for a copy of the [s]ettlement [a]greement. This is only supported by a statement in Parker's declaration about what [ALJ] Kolling allegedly said to her.

> "[Stockdale] further contends that a request by a judge is not 'compulsion of legal process' as required by the [s]ettlement [a]greement. Parker does not declare that [ALJ] Kolling ordered the [s]ettlement [a]greement produced. As such, the agreement was voluntarily produced by Defendants' attorney to harm Stockdale's interests which is expressly what was prohibited by the terms of the [s]ettlement [a]greement. The only competent evidence also confirms that [ALJ] Kolling did not find that any agreement was relevant and/or necessary as he found the 'employer misconstrues the claimant's appeal as a claim against the employer because the claimant's appeal falls under the legal purview of the UI provisions of [Unemployment Insurance] [C]ode sections 1256, 1030[,] and 1032.' "

The trial court concluded: "Here, as above, there is no evidence that [anyone] was compelled to provide a copy of the settlement agreement. The competing declarations give different accounts of how the settlement agreement was provided to [ALJ] Jeffery Kolling, and the circumstances surrounding it."

---

[7] As cited in the trial court's ruling.

15.

(iv)    Defendants Were Required, Under Settlement Agreement, to Prevent
        Parker, Their Agent, From Disclosing Settlement Agreement to Third Party

In addition, the trial court addressed the question whether Mario and Seanna were "bound to prevent their agent, Parker, from disclosing the terms of the settlement agreement." (Some capitalization omitted.) The court observed: "[Stockdale] argues that Defendants were signatories to the [s]ettlement [a]greement. They allowed the agreement to be disclosed to their attorney, Parker. Parker thereafter violated the confidentiality provision by filing the document in connection with the EDD proceeding. It is irrelevant that Defendants were not parties to the EDD proceeding and that does not excuse them [from] liability for their agent's actions. (See *Wentland*, *supra*, 126 Cal.App.4th at p. 1488 [holding principal[s] liable for breach of confidentiality resulting from 'statements of [their] attorney … in briefing on motion for summary judgment].)"

The trial court observed that Stockdale basically posited that Mario and Seanna had breached the settlement agreement "by allowing their attorney, Parker, to file the un-redacted [s]ettlment [a]greement in connection with the EDD proceedings." The court determined that Stockdale had demonstrated the minimal merit required to support its breach of contract claim, mandating denial of Mario and Seanna's anti-SLAPP motion.

Finally, the trial court was not swayed by Mario and Seanna's assertion that Adriana had made the disputed disclosures of the confidential agreement, and she alone should be held responsible for them. Rather, the court concluded it was unclear whether attorney Parker or Adriana disclosed the settlement agreement in the EDD proceedings regarding Adriana's claim for unemployment benefits. Specifically, the court observed: "[T]he court finds highly questionable the claim by Defendant[s'] counsel that she was not the one who gave [ALJ] Jeffery Kolling a copy of the settlement agreement. Counsel contends that non-party Adriana Ramirez was the one who actually gave [ALJ] Jeffery Kolling a copy of the settlement agreement, not the Defendants named in this matter or

16.

their counsel. [Citation.] However, Ms. Parker has served as counsel for all parties in each of the four matters and represented [Adriana Ramirez] at the EDD hearing. It seems doubtful that Adriana Ramirez disclosed the settlement agreement at her own undertaking when Ms. Parker represented her for the EDD hearing."

(v)    Trial Court Denied Mario and Seanna's Anti-SLAPP Motion

Ultimately, the trial court concluded: "[Stockdale] must demonstrate that [its] claims have at least 'minimal merit.' [Citation.] [Stockdale] has at least done that here." Accordingly, the court denied Mario and Seanna's anti-SLAPP motion.

**Mario and Seanna's "Voluminous" Filings in Various Courts**

Mario and Seanna have made numerous filings in this matter both in the superior court and in this court, in the course of this litigation. The same pattern apparently existed in the prior multi-case litigation between the parties.[8]

---

[8] For example, Mario, Adrianna, and Seanna, represented by attorney Shiloh Parker, sued Stockdale's attorney in the prior litigation, Sandra McCormack, in the Los Angeles County Superior Court. McCormack brought an anti-SLAPP motion, which the trial court denied. The appellate court reversed, stating:

> "If you are a party in litigation, your tactic of suing opposing *counsel* is apt to trigger swift retaliation: an anti-SLAPP motion. If opposing counsel are helping their clients petition for legal relief, your motion may fall within anti-SLAPP's prong one as an attack on petitioning activity. If so, then prong two will require you to produce evidence your claims have minimal merit. If you cannot show minimal merit, you may have to pay your opponent for the trouble you have caused.

> "This case fits this pattern.

> "[Mario, Adriana, and Seanna were] engaged in litigation with third parties. [They] sued opposing counsel: attorney Sandra McCormack and her law firm. Defendant McCormack responded with the predictable anti-SLAPP motion. In opposition, [Mario, Adriana, and Seanna] offered only an argumentative declaration by [their] attorney and no actual evidence. In this court [Mario, Adriana, Seanna] forfeit[] [their] opportunity to argue the merits, so McCormack's motion wins the day. We reverse the trial court's denial of McCormack's anti-SLAPP motion and remand for a calculation of

17.

At some point after the trial court denied Mario and Seanna's anti-SLAPP motion, attorney Shiloh Parker substituted out as their counsel. Similarly, attorney Parker substituted out as their counsel on appeal.

It also bears mention that after the trial court denied Mario and Seanna's anti-SLAPP motion, the trial court struck Mario's cross-complaint; this was the cross-complaint that resulted in a change in the classification of this case from limited civil to unlimited civil after Stockdale filed its response to the anti-SLAPP motion. In addition, the court struck a cross-complaint subsequently filed by Seanna. More specifically, the court struck both defendants' cross complaints pursuant to an order to show cause proceeding that took place sometime after Mario and Seanna's anti-SLAPP motion was denied.

Following the trial court's denial of Mario and Seanna's anti-SLAPP motion, the court held an "Order to Show Cause [OSC] hearing re why the court should not[] impose terminating sanctions striking cross-complaints for continued failure to comply with court orders and provide reliable contact information; strike all filings submitted in individual capacities as purported pro per litigants; strike the substitutions of attorney and fee waiver requests, [and] impose monetary sanctions under Code of Civil Procedure [§§] 128.7, 177.5, 572.2, and California Rules of Court, Rule 2.30[.]" (Some capitalization omitted.)

---

the fees and costs [Mario, Adriana, and Seanna] must pay." (*Ramirez v. McCormack* (2025) 113 Cal.App.5th 493, 495.)

Stockdale states in its respondent's brief: "After [Mario, Adriana, and Seanna] reignited litigation by suing Stockdale's unlawful detainer and employment lawyers for allegedly encouraging Stockdale to breach the settlement agreement, [Stockdale] filed the Limited Civil Complaint giving rise to this appeal, asserting a single cause of action for Breach of Contract that sought to enforce the Settlement Agreement's confidentiality provision and recover limited damages under the liquidated damages clause." (Footnote omitted.)

The trial court had required Mario and Seanna to personally appear at the OSC hearing; however, neither of them appeared at the hearing. The court issued a written ruling after the hearing. In its ruling, the court stated: "The Court finds that the parties willfully failed to appear in violation of a direct court order. This is a continuing pattern of disregard for court orders."

The trial court further found: "[The] OSC hearing was deliberately circumvented and this Court's legitimate inquiries and processes were obstructed. The record confirms that Ms. Parker continues to orchestrate this litigation despite having formally substituted out." In addition, the court noted: "The Court also has serious concerns that the documents purportedly signed by the defendants while they were represented by attorney Shiloh Parker, including declarations signed under penalty of perjury, may not have been reviewed, approved or signed by the defendants. The Court also has concerns that documents filed with this Court by attorney Shiloh Parker while she was counsel of record that were purportedly signed by persons other than the defendants, including declarations and proofs of service, may not have been signed by those individuals."

The trial court further observed: "The Court has no confidence that the documents purportedly submitted by Seanna Ramirez and Mario Chavez-Chavez in pro per [including fee waiver requests] were in fact reviewed, approved, or signed by them personally." The court concluded: "These filings are not entitled to any presumption of authenticity or procedural validity and may have been submitted without lawful authority."

Finally, the trial court stated:

"Based on this record, the Court makes the following orders:

"1. The first amended cross-complaints filed by Seanna Ramirez and Mario Chavez-Chavez are STRICKEN in their entirety.

19.

"2. All documents filed in pro per by either defendant following the substitution of counsel are STRICKEN, including declarations, notices, motions, and oppositions.

"3. Defendants Mario Chavez-Chavez and Seanna Ramirez are ordered to personally appear in court … to answer questions from the Court regarding their awareness of and participation in this litigation.

"The appearance must be in person. No remote appearance, special appearance, or appearance by limited scope counsel will be permitted.

"Until and unless the Defendants personally appear at the above hearing, the Court precludes them from filing any further documents in this action, including pleading, motions, or oppositions [with certain exceptions].

[¶] … [¶]

"5. Pending further order of the Court, no substitution of attorney form purporting to reappoint Shiloh A. Parker as counsel of record for the defendants shall be accepted, honored, or deemed valid unless and until both defendants appear personally before the Court and [make certain affirmations] under oath[.]"

The trial court imposed monetary sanctions on each defendant for failure to appear at the OSC hearing and "for misuse of court processes." The court also "reserve[d] jurisdiction to impose further sanctions or make additional orders or referrals as appropriate."

As for Mario and Seanna's filings in this court, they filed four writ petitions prior to filing this appeal. The writ petitions were all summarily denied and do not appear to be relevant to the issues on appeal.

## DISCUSSION

### I. The Anti-SLAPP Statute and Standard of Review

The anti-SLAPP statute, section 425.16, provides a procedure for expeditiously resolving "nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235; *Varian Medical Systems,*

20.

*Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 (*Varian*) ["The Legislature enacted section 425.16 to prevent and deter 'lawsuits [referred to as SLAPPs] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."]; § 425.16, subd. (a).)

"When served with a SLAPP suit, the defendant may immediately move to strike the complaint under section 425.16." (*Hansen v. Department of Corrections and Rehabilitation* (2008) 171 Cal.App.4th 1537, 1543 (*Hansen*); *Varian, supra,* 35 Cal.4th at p. 192 ["the Legislature sought ' "to prevent SLAPPs by ending them early and without great cost to the SLAPP target" ' "].)  "Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary judgment-like procedure at an early stage of the litigation." (*Varian, supra,* at p. 192.)

To determine whether a motion to strike under section 425.16, subdivision (a) or anti-SLAPP motion should be granted, the trial court must engage in a two-step process. (*Hansen, supra,* 171 Cal.App.4th at p. 1543; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)  First, the court decides whether the defendant has made a threshold showing that the challenged "cause of action" is one "arising from" protected speech or petitioning activity. (§ 425.16, subd. (b)(1); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 (*Cotati*).)  If the court finds such a showing has been made, it must then consider whether the plaintiff has demonstrated, with admissible evidence, a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); *Cotati, supra,* at p. 76.)[9]

---

[9] Section 425.16, subdivision (b)(1) provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

To establish the requisite probability of prevailing, the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*); *Navellier*, *supra*, 29 Cal.4th at pp. 88-89.)

" 'In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant[.]' " (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 317 (*Yu*), overruled on other grounds by *Newport Harbor Ventures*, *LLC* v. *Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 64; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 655 [as is the case with summary judgment motions, the issues in an anti-SLAPP motion are framed by the pleadings], overruled on other grounds in *Equilon*, *supra*, 29 Cal.4th at p. 68, fn. 5.) The plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010 [in reviewing plaintiff's evidence, the court does not weigh it; rather, it simply determines whether plaintiff has made a prima facie showing of facts necessary to establish its claim at trial].)

" '[T]hough the [trial] court does not *weight* the credibility or comparative probative strength of competing evidence, it should grant the [anti-SLAPP] motion if, *as a matter of law*, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' " (*Yu*, *supra*, 103 Cal.App.4th at p. 317, second italics added; *Wilson*, *supra*, 28 Cal.4th at p. 821 [in anti-SLAPP litigation, a plaintiff's facially sufficient evidentiary showing may be defeated by a defendant's contrary showing *as a matter of law*].) Thus, a plaintiff's burden on the second prong of the anti-SLAPP test is "akin to that of a party *opposing* a motion for

summary judgment." (*Yu* at p. 317, italics added.) To reiterate and sum up, at the second step of the anti-SLAPP test, courts "do not weigh evidence or resolve conflicting factual claims"; rather, they "accept the plaintiff's evidence as true and evaluate the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 316.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).) Specifically, we review both prongs of the anti-SLAPP analysis de novo. (*Hansen*, *supra*, 171 Cal.App.4th at p. 1544.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier*, *supra*, 29 Cal.4th at p. 89.) Just like the trial court, the appellate court considers " 'the pleadings, and supporting and opposing affidavits upon which the liability or defense is based.' " (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.) Similarly, we neither " 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Ibid.*)

" 'If the plaintiff "can show a probability of prevailing on any part of its claim, the cause of action is not meritless" and will not be stricken; "once a plaintiff shows a probability of prevailing *on any part of its claim*, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands." ' " (*D'Arrigo Bros. of California v. United Farmworkers of America* (2014) 224 Cal.App.4th 790, 800 (*D'Arrigo Bros.*).)

**II.    Prong One:  Mario and Seanna Have Burden to Show Stockdale's Breach of Contract Cause of Action Arises from Protected Activity and is Potentially a SLAPP**

Starting with the first prong of the anti-SLAPP analysis, we consider "whether the defendant has made a threshold showing that the [breach of contract] cause of action is one arising from protected activity," such that it is potentially a SLAPP.  (*Equilon*, *supra*, 29 Cal.4th at p. 67; § 425.16, subd. (b)(1).)  This in turn requires us to consider whether Stockdale's breach of contract complaint arose from acts taken by defendants or their agent in furtherance of the "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  (§ 425.16, subd. (b)(1).)

As to prong one of the anti-SLAPP analysis, Stockdale notes in its brief: "[Stockdale] recognizes the Supreme Court has determined 'the mere fact the constitutional speech occurred in violation of a contract did not by itself preempt the application of the Anti-SLAPP statute.' (*DaimlerChrysler Motors Co. v. Lew Williams Inc.* (2006) 142 Cal.App.4th 344, 351 [(*Daimler*)].)"  Stockdale continues, quoting *Navellier*, *supra*, 29 Cal.4th at page 94:  " 'The Legislature's inclusion of a merits prong to the statutory SLAPP definition [in section 425.16, subdivision (b)(1)] … preserves appropriate remedies for breaches of contracts involving speech by ensuring that claims with the requisite minimal merit may proceed.' "  Stockdale adds:  "[Stockdale] agrees with [Mario and Seanna] that the single breach of contract claim is appropriately analyzed under the second prong of the Anti-SLAPP analysis[.]"

Given Stockdale's concession, we conclude Stockdale's breach of contract complaint arises from protected activity.  Next, we turn to the second prong of the anti-SLAPP analysis—whether Stockdale has established the probability of prevailing in the action.

**III.  Prong Two:  Stockdale has Burden to Show a Probability of Success on the Merits of Breach of Contract Claim**

To establish a reasonable probability of prevailing under the second prong of the anti-SLAPP analysis, "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson*, *supra*, 28 Cal.4th at p. 821.)  "In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, *as a matter of law*, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Ibid.*, second italics added.)

Here, the trial court concluded that Stockdale had shown a probability of prevailing on its breach of contract complaint.  The court therefore denied Mario and Seanna's anti-SLAPP motion.  We agree and affirm.

**A.  *Elements of a Breach of Contract Claim***

Here, Stockdale's sole cause of action is for breach of contract.  "Establishing that claim requires a showing of '(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.' " (*D'Arrigo Bros.*, *supra*, 224 Cal.App.4th at p. 800.)  The focus in this matter is on defendants' potential breach and on potential waiver of contractual protection by Stockdale.

**B.  *Stockdale has Shown a Probability of Prevailing on its Breach of Contract Complaint:  Litigation Privilege Does Not Apply to Shield Defendants' Disclosures***

As noted, Stockdale's complaint posited that Mario and Seanna breached the settlement agreement when their agent, attorney Shiloh Parker, disclosed the entire, unredacted settlement agreement on three occasions in the course of the EDD appeal

proceedings arising from Adriana's unemployment benefits claim.  (See *Wentland*, *supra*, 126 Cal.App.4th at p. 1495 [" 'The relationship of attorney and client is one of agent and principal.' "].)  Mario and Seanna argue that "[t]he trial court erred by finding that the litigation privilege … did not bar [Stockdale's] breach of contract claim."  Stockdale contends that *Wentland*, *supra*, at page 1484, forecloses Mario and Seanna's argument.  We agree with Stockdale.

Civil Code section 47, subdivision (b) provides, in relevant part:  "A privileged publication or broadcast is one made:  [¶] … [¶] … [i]n any … judicial proceeding, [and/or] in any other official proceeding authorized by law[.]"  The litigation privilege "is relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing."  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.)  Thus, if the litigation privilege precludes a finding of liability for breach on the part of Mario and Sienna, Stockdale cannot establish a probability of prevailing on its breach of contract claim.

The primary purpose of the litigation privilege is to provide litigants and witnesses the utmost freedom of access to the courts without fear of harassment in subsequent derivative actions.  (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1245.)  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)  The privilege is "not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards."  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)

In *Wentland*, *supra*, 126 Cal.App.4th 1484, Charles Wentland, Warren Wass, and Walter Reiss (and various trusts they controlled) were partners in Parkview Terrace, a real estate investment partnership.  When Parkview Terrace started to fail, Wass and

26.

Reiss began to suspect that Wentland had been misappropriating funds. They hired a certified public accountant (CPA) to audit the partnership's books. Wentland denied any wrongdoing and cooperated with the audit. (*Wentland*, at p. 1489.) Ultimately, Wentland, Wass, and Reiss settled their differences without litigation. They reached a settlement under which Wentland agreed to purchase Wass and Reiss's interest in Parkview Terrace in consideration for Wass and Reiss agreeing not to disparage Wentland's alleged management of Parkview Terrace; and all the parties agreed to keep the terms of the settlement confidential under a confidentiality provision.[10] (*Ibid*.) For any breach of the agreement, Wass and Reiss would be liable to Wentland in the sum of $30,000. (*Id*. at p. 1490.) Wass and Reiss were represented by attorney Robert Sternfels during negotiation of the agreement. (*Ibid*.)

Wass and Reiss also held interests in other real estate investment partnerships that Wentland managed. At some point after entering into the Parkview Terrace settlement, Wass and Reiss sued three of the other real estate investment partnerships and Wentland, seeking an accounting. Wentland moved for summary judgment on grounds there were no allegations of wrongdoing to support an accounting. (*Wentland*, *supra*, 126 Cal.App.4th at p. 1487.) Attorney Sternfels, who was again representing Wass and Reiss, filed an opposition on their behalf in which he charged that Wentland had committed wrongdoing in connection with the affairs of Parkview Terrace. (*Id*. at p. 1490.) Attorney Sternfels attached to the opposition a declaration by the CPA who had audited Parkview Terrace's books. In the declaration, the CPA stated that the Parkview audit had revealed self-dealing by Wentland. *(Ibid.)* Wass and Reiss argued this was sufficient evidence of wrongdoing to support their request for an accounting.

---

**10** Wass and Reiss also provided Wentland with a letter of apology that Wentland could use if Wass and Reiss violated the agreement. (*Wentland*, *supra*, 126 Cal.App.4th at p. 1489.)

Wentland responded by filing a cross-complaint, asserting that the allegations of wrongdoing made against him in the opposition to his summary judgment motion and the CPA's declaration violated the confidentiality provision of the prior agreement between the parties and sought the $30,000 in liquidated damages under the agreement. (*Wentland*, *supra*, 126 Cal.App.4th at p. 1490.) Reiss filed a demurrer to the cross-complaint, arguing that the litigation privilege protected Wass and him from liability to Wentland for the content of documents filed by their attorney (also, agent) in court and for the content of the declaration of their CPA (also, agent). The trial court granted the demurrer and dismissed Wentland's cross-complaint. Wentland appealed. (*Id*. at pp. 1488, 1490.)

The appellate court reversed, holding that the litigation privilege did not apply to shield Wass and Reiss from liability for breaching the non-disparagement agreement. *Wentland* noted that "whether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege." (*Wentland*, *supra*, 126 Cal.App.4th at p. 1492.) *Wentland* clarified that those underlying policies serve to "ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation." (*Ibid*.) Ultimately, the court concluded the litigation privilege did not apply because the breach at issue "was not simply a communication, but also wrongful conduct or performance under the contract[.]" (*Id*. at p. 1494.)

*Wentland* explained:

"Unlike in the usual derivative tort action, application of the privilege in the instant case does not serve to promote access to the courts, truthful testimony or zealous advocacy. This cause of action is not based on allegedly wrongful conduct during litigation … Rather, it is based on breach of a separate promise independent of the litigation … This breach was not simply a communication, but also wrongful conduct or performance under the contract … [H]ere application of the privilege would frustrate the purpose of the Parkview Terrace agreement.

28.

"Application of the privilege in this case does not encourage finality and avoid litigation. In reaching settlement in the Parkview Terrace matter, the parties presumably came to an acceptable conclusion about the truth of [Wass and] Reiss's comments about Wentland's management of the [Parkview Terrace] partnership. Allowing such comments to be made in litigation, shielded by the privilege, invites further litigation as to their accuracy and undermines the settlement reached in the Parkview Terrace matter." (*Wentland*, *supra*, 126 Cal.App.4th at p. 1494.)

*Wentland* cited *Navellier*, *supra*, 29 Cal.4th at page 94 in noting, "Just as one who validly contracts not to speak waives the protection of the anti-SLAPP statute [citation], so too has he waived the protection of the litigation privilege." (*Wentland*, *supra*, 126 Cal.App.4th at p. 1494.) *Wentland* also cited *Navellier II*, *supra*, 106 Cal.App.4th at page 774, which suggested, where a counterclaim was filed in breach of a release, the litigation privilege would not bar an ensuing breach of contract claim. (*Id*. at p. 1491.)

Finally, *Wentland* held that the actions of the agents of Wass and Reiss—that is, the actions of attorney Sternfels and the CPA—were attributable to Wass and Reiss. (*Wentland*, *supra*, 126 Cal.App.4th at p. 1495 [" 'The relationship of attorney and client is one of agent and principal.' "].) *Wentland* concluded: "The cross-complaint alleged a breach of contract by Wass and Reiss through an agent. We have concluded the litigation privilege should not apply to an action for breach of contract in these circumstances; therefore, the trial court erred in sustaining the demurrer." (*Ibid*.)

Also instructive are *ITT Telecom Products Corp. v. Dooley* (1989) 214 Cal.App.3d 307 (*ITT*) and *Daimler, supra,* 142 Cal.App.4th 344. "In *ITT* …, the court found the litigation privilege did not apply to statements in breach of an express contract of confidentiality or nondisclosure. The defendant had signed an agreement not to disclose the plaintiff's trade secrets. The complaint alleged he breached this agreement by supplying information to a third party to assist in litigation. *Balancing the society's interest in accurate judicial proceedings against the plaintiff's property interest in trade secrets and the defendant's written promise of nondisclosure, the court found the privilege did not apply*. [Citation.] The court noted there was no claim the disclosures

were judicially compelled." (*Wentland*, *supra*, 126 Cal.App.4th at p. 1493, citing *ITT*, *supra*, 214 Cal.App.3d at p. 320.)

In *Daimler*, a car dealer protested a manufacturer's notice of its intent to establish a new car dealership in violation of an agreement in which the car dealer had promised not to protest. (*Daimler*, *supra*, 142 Cal.App.4th at p. 347.) The manufacturer filed a cross-complaint against the dealership alleging breach of contract for violating the agreement not to protest. (*Id*. at p. 349.) The car dealership filed an anti-SLAPP motion, which was denied. The appellate court in *Daimler* affirmed. (*Id*. at p. 347.)

More specifically, the *Daimler* court addressed, under prong two of the anti-SLAPP analysis, whether the manufacturer had satisfied its burden to show that there was a probability of success on the merits of its cross-complaint. (*Daimler, supra,* 142 Cal.App.4th at p. 352.) *Daimler* analyzed the merits of the cross-complaint and concluded the manufacturer had met its burden. *Daimler* noted: "There can be no dispute [the car dealer] breached [the agreement] by filing protests after expressly agreeing for valuable consideration not to do so." (*Ibid*.) *Daimler* further emphasized: "[The car dealer] waived its right to protest, then duplicitously protested. It should not be allowed to shield itself from liability under cloak of a statute [i.e., the anti-SLAPP statute] designed to protect a right [it] voluntarily relinquished in return for economic benefits it now holds." (*Id*. at p. 354.) *Daimler* therefore affirmed the judgment of the trial court denying the car dealership's anti-SLAPP motion." (*Id*. at p. 355.)

Here, under the confidentiality provision of the settlement agreement (paragraph 5.1 of the agreement) between Stockdale on one hand and Mario, Adriana, and Seanna on the other, all parties specifically agreed "they will not, without compulsion of legal process, disclose to *any third party* any of the terms of this Agreement, including the negotiation of it[.]" The parties also agreed, under paragraph 5.1, that if they made a permitted disclosure to "any spouse, attorneys, accountants or other professional advisors," "they shall cause such third party to whom disclosure has

been made to agree to comply with this covenant of confidentiality and non-disclosure and, in the event such third party breaches this covenant of confidentiality and non-disclosure, such breach shall be deemed to have been committed by the disclosing party."

In his declaration submitted with Stockdale's opposition to Mario and Seanna's anti-SLAPP motion, Harvey Miller, Stockdale's president, specifically testified: "I am aware that Defendants have disclosed the Confidential Settlement Agreement on at least three occasions in what I believe is a violation of Section 5.1 of the Settlement Agreement. I was served with documents in the EDD matter showing that Defendants' attorney, Ms. Parker, disclosed the entire, unredacted, Confidential Settlement Agreement on February 9, 2024, April 19, 2024, and most recently on May 6, 2024. Each of these disclosures were made in the context of an EDD proceeding as referenced in Defendants' moving papers. Based on the information available to me, as a participant in the EDD process, Ms. Parker disclosed the Settlement Agreement to the EDD tribunal on her own volition, without compulsion of legal process, and for no apparent reason other than to attempt to disclose the terms of the Confidential Settlement Agreement to the tribunal."

Harvey Miller further testified in his declaration: "Neither I, nor Stockdale, ever consented to Defendants permitting Ms. Parker to submit the unredacted Settlement Agreement to the EDD [ALJ]. Neither I, nor Stockdale, ever waived the Settlement Agreement's confidentiality provision either orally or in writing. I can categorically state I did not consent to Ms. Parker submitting the Settlement Agreement to [ALJ] Kolling. I am also not aware of [ALJ] Kolling ever asking for or ordering that the Settlement Agreement be provided to him."

Stockdale contends that after entering into the settlement agreement, "[Mario and Seanna] breached this agreement by allowing their attorney, Parker, to file the unredacted Settlement Agreement in the EDD proceedings. [They] waived the right to disclose the agreement terms in exchange for an economic benefit and cannot later claim impunity for that breach under the litigation privilege."

Mario and Seanna attempt to distinguish *Wentland* by pointing to the evidence submitted in support of their anti-SLAPP motion, namely the declarations of Adriana and attorney Parker. They argue that this evidence shows *Adriana* filed the confidential settlement agreement in the EDD proceedings, not their agent, Parker. They assert their evidence "defeat[s]" Stockdale's evidence, and, in turn, Stockdale cannot demonstrate that Parker, their agent, disclosed the confidential agreement.

Stockdale responds: "[Mario and Seanna] have not defeated any evidence 'as a matter of law,' and instead have—*at most*—showed that an evidentiary dispute exists which justifies denying the [a]nti-SLAPP [motion] on the grounds that [Stockdale] has demonstrated a probability of prevailing [on the] merits." Stockdale adds: "Specifically, the dispute here is that Parker claims she did not disclose the Settlement Agreement (and does not say who did). [Citation.] In contrast, Miller directly contradicts Parker by declaring 'I was served with documents in the EDD matter showing that [Mario and Seanna's] attorney, Ms. Parker, disclosed the entire, unredacted, Confidential Settlement Agreement on February 9, 2024, April 19, 2024, and most recently on May 6, 2024.' [Citation.] This conflict of evidence makes it such that [Stockdale] has demonstrated the minimal merit required to support the breach of contract claim and[, therefore,] the denial of the [a]nti-SLAPP [m]otion should be affirmed."

We agree with Stockdale. Attorney Parker states in her declaration: "As part of Adriana Ramirez's [EDD] appeal, I appeared before [ALJ] Jeffery Kolling on her behalf at multiple hearings, including but not limited to February 9, 2024, April 19, 2024, and May 6, 2024." Parker adds that "a copy of the settlement agreement was provided to [ALJ] Jeffery Kolling, with the consent of Mr. Miller[.]" Parker further states: "I was not the one who provided [ALJ] Kolling with a copy of the settlement agreement." As for Adriana's declaration, she does *not* directly attest that she filed the confidential settlement agreement for purposes of the EDD appeal hearings on the aforementioned dates. Rather, she only makes the following elliptical statement: "Mr. Miller agreed to

32.

me providing the [ALJ] with a copy of the settlement agreement via the EDD portal, and Mr. Miller did not object to me submitting a copy of the settlement agreement via the EDD portal."

Given the conflicting evidence surrounding the disclosure of the settlement agreement during the EDD proceedings, we conclude Mario and Seanna have not established, *as a matter of law*, who filed the settlement agreement with EDD on the three occasions at issue (or that Adriana did so on her own behalf). In turn, we reject Mario and Seanna's claim that their evidence on this point defeated Stockdale's.[11] Therefore, applying *Wentland* and the other authorities noted above, we affirm the trial court's ruling that the litigation privilege does not protect the disclosures made in the EDD proceeding.[12]

---

[11] The trial court's ruling on this point stated: "[T]he court finds highly questionable the claim by [attorney Parker] that she was not the one who gave [ALJ] Jeffery Kolling a copy of the settlement agreement. [Mario and Seanna] contend[] that non-party Adriana Ramirez was the one who actually gave [ALJ] Jeffery Kolling a copy of the settlement agreement, not [Mario and Seanna] or their counsel. [Citation.] However, Ms. Parker has served as counsel for all parties in each of the four matters and represented Ms. Ramirez at the EDD hearing. It seems doubtful that Adriana Ramirez disclosed the settlement agreement at her own undertaking when Ms. Parker represented her for the EDD hearing."

Mario and Seanna criticize the trial court's finding. They note: "This is clear weighting of the evidence by [the trial court]. Further, this finding is not supported by the record as noted above." However, the trial court was merely pointing out that the evidence on the point was disputed and drawing an inference from that conclusion. The trial court's ultimate determination was that the issue could not be resolved as a matter of law in favor of Mario and Seanna. In any event, we have independently reviewed the issue and reached the same conclusion the trial court ultimately reached.

[12] Mario and Seanna further contend that "[t]he trial court erred by conflating Prong 1 case law with Prong 2 case law when analyzing the litigation privilege[.]" However, the court merely stated, in addressing the inapplicability of the litigation privilege under the circumstances: "Here, [Stockdale's] arguments are more persuasive. They contend that while [Mario and Seanna] cite several EDD specific cases showing that communications to the EDD are petitioning activity—a fact Stockdale does not dispute—none of them refute that breach of contract claims are not subject to the

### C. *Mario and Seanna Have not Shown That Stockdale Waived its Rights Under the Settlement Agreement's Confidentiality Provision*

Mario and Seanna suggest that Stockdale waived its rights under the confidentiality provision of the settlement agreement because Harvey Miller, president of Stockdale, "put the issue of the settlement agreement before [ALJ] Kolling." Mario and Seanna add: "[I]t was Mr. Miller who disclosed the terms of the agreement to [ALJ] Kolling because [appellants'] evidence defeated [Stockdale's] show of evidence." Mario and Seanna further state that "Mr. Miller disclosed the terms of the settlement agreement to [ALJ] Kolling to support his position that the agreement barred Adriana from obtaining EDD benefits."

Adriana, in her declaration submitted in support of Mario and Seanna's anti-SLAPP motion, stated: "Mr. Harvey Miller appeared on behalf of Stockdale for all of the [EDD] hearings. At the first hearing, Mr. Miller told [ALJ] Jeffery Kolling that I was unable to collect unemployment benefits because the settlement agreement that we signed did not allow me to collect unemployment benefits. Mr. Miller explained to [ALJ] Jeffery Kolling that Section 2 and Section 2.1 of the settlement agreement prevented me from collecting benefits because I had released all claims against [Stockdale] in the settlement agreement." In addition, attorney Parker stated in her declaration: "*Mr. Miller disclosed* … the terms of the settlement agreement [at the EDD hearing], including the term that Adriana Ramirez had released all claims against [Stockdale], which included her EDD claim." (Italics added.)

In contrast, Harvey Miller averred in his declaration: "Neither I, nor Stockdale, ever consented to Defendants permitting Ms. Parker to submit the unredacted Settlement Agreement to the EDD [ALJ]. Neither I, nor Stockdale, ever waived the Settlement

litigation privilege." We therefore reject Mario and Seanna's contention. Furthermore, we have independently reviewed Stockdale's showing as to prong two of the anti-SLAPP analysis and conclude that the litigation privilege does not apply to protect the disclosures at issue.

Agreement's confidentiality provision either orally or in writing. I can categorically state I did not consent to Ms. Parker submitting the Settlement Agreement to [ALJ] Kolling. I am also not aware of [ALJ] Kolling ever asking for or ordering that the Settlement Agreement be provided to him"

The trial court, for its part, noted that the ALJ's decision, as quoted in attorney Parker's declaration, provided: " 'The employer contends that such a claimant appeal bre[a]ches the expressed terms of such agreement which prohibits a claimant claim against the employer. [¶] Unfortunately, the employer misconstrues the claimant's appeal as a claim against the employer … [¶] … [¶] The claimant's appeal in this matter is not the issue of a claim against the employer, as the employer proffers, or the issue of any direct UI benefit payments to the claimant, which is implicit in the employer's contention, rather the appeal is [about the claimant's eligibility for benefits in the first instance].' "

The trial court continued: "This would seem to support Defendant's argument that [Stockdale] argued that the settlement agreement at issue here barred the EDD Board from charging [Stockdale's] EDD account with the department. However, the court is still left with the issue of who disclosed portions of the agreement first. Mr. Harvey is arguing that Ms. Parker disclosed the Settlement Agreement to the EDD tribunal of her own volition, without compulsion of legal process, and for no apparent reason other than to attempt to disclose the terms of the Confidential Settlement Agreement to the tribunal. While Ms. Parker argues that it was Mr. Harvey that raised the settlement as a defense. [¶] It is impossible for the court at this stage to determine what actually happened at the EDD hearing when we are left to rely on competing declarations."

The trial court added: "Also of issue here is Section 11.2 of the Confidentiality Agreement, which states, [¶] "No waiver of any term, provision, or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be, or shall constitute, a waiver of any other provision hereof, whether or not

similar, nor shall such waiver constitute a continuing waiver, *and no waiver shall be binding unless executed in writing by the Party making the waiver*." (Italics added.) The court essentially concluded that Mario and Seanna had not established, as a matter of law, that Stockdale had waived its rights under the confidentiality provision of the settlement agreement.

We agree with the trial court. The declarations in the record paint a disputed picture of what occurred at the EDD proceedings. In addition, the settlement agreement was entitled "Confidential Settlement Agreement and General Release of All Claims," and paragraph 5.1 of the agreement states that "nothing contained herein shall preclude [the parties] from acknowledging that the dispute has been resolved." (Some capitalization omitted.) Stockdale contends that Miller's statements to ALJ Kolling were consistent with paragraph 5.1 of the settlement agreement, and this contention has not been refuted as a matter of law. Furthermore, there is no evidence that Stockdale executed a written waiver, as required under paragraph 11.2 of the agreement for any waiver to be binding. In sum, Stockdale's breach of contract claim is not defeated as a matter of law by Mario and Seanna's waiver argument.

### D. *Mario and Seanna Have Not Shown the Disclosures Were Made Under Compulsion of Legal Process*

Mario and Seanna challenge the trial court's "finding that there was no evidence that [attorney] Parker was compelled by … legal process to disclose the settlement agreement." They assert: "[T]here is evidence that [ALJ] Jeffery Kolling requested a copy of the settlement [agreement] to resolve the issue of whether the settlement agreement barred Adriana Ramirez from obtaining unemployment benefits." They further argue that, therefore, disclosure of the *entire*, *unredacted* settlement agreement was permitted under the settlement agreement, which allows for disclosures compelled by

36.

legal process.[13] They also contend that ALJ Kolling's decision reflects the relevance of the settlement agreement to the EDD proceedings.

Stockdale responds in its brief: "There is no competent evidence that [ALJ] Kolling ever asked for a copy of the Settlement Agreement. This is only supported by a hearsay statement in [Adriana's] declaration about what [ALJ] Kolling allegedly said to her."[14] Stockdale continues: "Further, even were the Court to credit [Adriana's] hearsay declaration—it should not—a request by a judge is not 'compulsion of legal process' as required by the Settlement Agreement. [Neither Adriana nor Parker] declare that [ALJ] Kolling *ordered* the Settlement Agreement produced. As such the agreement was voluntarily produced by [Parker] to harm [Stockdale's] interests which is expressly what was prohibited by the terms of the Settlement Agreement." Stockdale adds: "The only competent evidence also confirms that [ALJ] Kolling did not find that any agreement was relevant and/or necessary as he found the 'employer misconstrues the claimant's appeal as a claim against the employer because the claimant's appeal falls under the legal purview of UI provisions of [Unemployment Insurance] [C]ode sections 1256, 1030 and 1032.' "

Stockdale also points to Miller's testimony in his declaration: "[I] 'can categorically state I did not consent to Ms. Parker's submitting the Settlement Agreement

---

**13** Mario and Seanna cite *Sauer v. Superior Court* (1987) 195 Cal.App.3d 213 (*Sauer*), stating it "show[s] that a written order was not required for a litigant to be compelled by a judge to produce evidence." However, they provide a bare cite to *Sauer* (without even a pin cite), and do not further address or clarify the applicability of *Sauer*. It does not appear that *Sauer* bears any relevance to the issue at hand.

**14** Stockdale's brief actually states that *Parker's* declaration contains a hearsay statement to the effect that ALJ Kolling asked for a copy of the settlement agreement. However, a review of the record shows that only *Adriana's* declaration states that ALJ Kolling "asked" for a copy of the settlement agreement. Parker's declaration merely states, "a copy of the settlement agreement was provided to [ALJ] Jeffery Kolling … to resolve the issue[.]"

to [ALJ] Kolling.  I am also not aware of [ALJ] Kolling ever asking for or ordering that the Settlement Agreement be provided to him.' "  Stockdale posits:  "[Stockdale] can, at minimum, demonstrate conflicting evidence sufficient to establish minimal merit requiring the Court affirm the denial of the [a]nti-SLAPP [m]otion."

On this issue, the trial court noted:  "Here, as above, there is no evidence that [Adriana or Parker were] compelled to provide a copy of the settlement agreement.  The competing declarations give different accounts of how the settlement agreement was provided to [ALJ] Jeffery Kolling, and the circumstances surrounding it."

We agree with the trial court about the existence of an evidentiary conflict regarding the circumstances under which the settlement agreement was provided to ALJ Kolling.  We conclude Mario and Seanna have not shown, as a matter of law, that the disclosures of the settlement agreement occurred under compulsion of legal process.

### E.  Stockdale has Established that Mario and Seanna Were Bound to Prevent any Improper Disclosures by Their Agent, Shiloh Parker

The trial court addressed the premise of Stockdale's complaint that Mario and Seanna, as signatories to the confidential settlement agreement, were obligated to ensure that any agent to whom the settlement agreement was properly disclosed would maintain its confidentiality.  Stockdale's breach of contract claim contemplates that Mario and Seanna allowed the agreement to be disclosed to their attorney and agent, Parker, who thereafter violated the agreement's confidentiality provision by filing the entire agreement in the EDD proceeding.  The court concluded it was irrelevant that Mario and Seanna were not parties to the EDD proceeding and that their non-party status as to that proceeding would not shield them from liability for their agent's actions in disclosing the agreement.

To the extent Mario and Seanna argue they are not liable, as a matter of law, for disclosures made in the EDD proceeding, we reject that contention.  As discussed above, *Wentland*, *supra*, 126 Cal.App.4th 1484, held, in the context of Reiss and Wass's

38.

demurrer to Wentland's breach of contract crossclaim, that Reiss and Wass, *as the principals*, were potentially liable for breach of a confidentiality agreement as a result of disclosures made by *their attorney and agent* in a summary judgment opposition filed in the underlying case. Similarly, here Stockdale has established that its breach of contract claim has minimal merit in terms of Mario and Seanna's potential liability for any improper disclosures made by Parker in the EDD proceeding.

### F. Relevancy of Any EDD Privacy Protections

Finally, Stockdale notes that the settlement agreement required that the parties " 'will not, without compulsion of legal process, disclose *to any third party* any of the terms of this Agreement[.]' " Stockdale adds: "Absent a [c]ourt [o]rder requiring production, EDD [ALJ] Kolling *was a third party* who was unauthorized to see or learn the terms of the relevant [s]ettlement [a]greement." Stockdale refers to statements on EDD's website to the effect that EDD records are subject to disclosure under the California Public Records Act (Gov. Code, § 6250, et seq.), and continues: "Even if [Mario and Seanna] are correct that others may still be unable to learn the terms [of the agreement] by viewing the EDD filing, that remains irrelevant because all that the [c]onfidential [s]ettlement [a]greement requires is that it may not be disclosed to *any third party*."

It does not appear that Mario and Seanna have raised this issue in their briefs on appeal; Stockdale perhaps is responding to an issue raised below. In any event, Stockdale's argument has, at least, minimal merit.

### G. Conclusion

We conclude Stockdale has shown, at the second step of the anti-SLAPP analysis, a probability of prevailing on the merits of its breach of contract claim. Accordingly, we affirm the trial court's order denying Mario and Seanna's anti-SLAPP motion.

Given our resolution, we decline to address Stockdale's alternative argument that Mario and Seanna's anti-SLAPP motion should be denied on the procedural ground that

Mario improperly filed a cross-complaint solely to convert the case from a limited civil case to an unlimited one after Stockdale opposed the anti-SLAPP motion on the basis that the case was a limited civil case.

In addition, to the extent Mario and Seanna have raised any additional, miscellaneous claims finding fault with specific aspects of the trial court's ruling, we reject such claims as unsupported and/or unpersuasive. More importantly, since our review of the denial of their anti-SLAPP motion is de novo, we need not further address their complaints about the trial court's reasoning.

We further note that after Stockdale filed its respondent's brief and respondent's appendix in this case, Mario filed a motion to strike respondent's appendix. Mario complains, *inter alia*, that some of the trial court records included in respondent's appendix "create[] undue prejudice against [him] and … confuse[] the issues on … appeal." Stockdale filed an informal response to Mario's motion to strike respondent's appendix. Stockdale noted its respondent's appendix was properly filed under California Rules of Court, rule 8.124. As for the documents Mario complains are prejudicial to him, Stockdale points out they are "directly relevant" to this appeal as they demonstrate the cross-complaints filed by Mario and Seanna were dismissed by the trial court. Stockdale's points are well taken, and we decline to strike the respondent's appendix.

After Stockdale filed its respondent's brief and respondent's appendix, Mario also filed a request for judicial notice. Mario seeks to have this court take judicial notice of documents filed in another lawsuit involving Adriana and Stockdale. However, Mario does not provide any details or information about this separate lawsuit, nor does he explain the relevance of the documents encompassed in his request for judicial notice. Accordingly, the request for judicial notice is denied.

## DISPOSITION

The trial court's order denying Mario and Seanna's anti-SLAPP motion is affirmed. The matter is remanded for further proceedings, including a determination of

40.

Stockdale's entitlement to statutory fees and costs.  (Code Civ. Proc., § 425.16, subd. (c)(1).)



                                                         MEEHAN, J.

WE CONCUR:


DETJEN, Acting P. J.


DE SANTOS, J.